A98A0206. SOUTHERN ELECTRONICS DISTRIBUTORS, INC. v. ANDERSON.
(502 SE2d 257)

ANDREWS, Chief Judge.

Southern Electronics Distributors, Inc. (Southern) appeals from the trial court's dismissal, based on lack of personal jurisdiction, of its action against Anderson on his personal guaranty of a corporate debt.

1. " '(A) defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. (Cits.)' *Scovill Fasteners v. Sure-Snap Corp.,* 207 Ga. App. 539 (428 SE2d 435) (1993). 'If the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff. (Cit.) Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard. (Cits.)' Id. at 540." *Habersham Metal Products Co. v. Huntsville Fastener &c.,* 216 Ga. App. 646 (455 SE2d 356) (1995).

The pleadings and affidavits before us show that Anderson, a resident of Decatur, Alabama, was a principal of Anderson-Smith & Associates, Inc. (ASA), an Alabama corporation. On March 5, 1993, in Alabama, Anderson, as principal for ASA, executed a Credit Agree-

ment with Southern, located in Georgia. The agreement was for a credit line on an open account through which ASA would purchase from Southern computer hardware which would be shipped to Alabama. For the 1993 agreement, Anderson signed the following personal guaranty: "[t]o induce Southern Electronics Distributors, Inc. . . . to extend credit to Anderson-Smith & Assoc., Inc. . . . pursuant to this Credit Agreement, the undersigned C. A. Anderson hereby absolutely and unconditionally guarantees to Creditor the prompt and full payment when due according to the terms of this Credit Agreement of any and all indebtedness and liability of every kind, nature and character specified in this Credit Agreement, together with all interest thereon and all attorney's fees, costs, and expenses incurred by Creditor in collection of such indebtedness and liability."

On January 4, 1994, in Alabama, Anderson signed a second Credit Application with Southern, at Southern's request. The wording and format of this document were different from the 1993 one. The 1994 document set out the "Agreement to Terms," which was signed by Anderson as principal for ASA. While it also contained a personal guaranty, Anderson did not sign it.

Beginning on March 25, 1994, and continuing through July 5, 1994, over $45,000 worth of computer hardware was shipped by Southern to ASA in Alabama. In August, Southern sent ASA a demand letter for $45,567. In December 1994, ASA filed bankruptcy under Chapter 11, resulting in Southern's suit on Anderson's 1993 guaranty.

Anderson filed his affidavit and denied that he had (1) transacted any business in Georgia except for operating a restaurant/nightclub here in 1983; (2) appeared in court here; (3) owned any property here; or (4) committed any torts here.

In opposition, Southern filed the affidavit of Aikens, its director of credit. She stated that she was personally aware of two occasions when Anderson visited Southern's corporate office in Georgia, although no dates were given. During these visits, Aikens stated that Anderson was acting as an officer of ASA and engaged in negotiations to increase the line of credit.

"Due process requires that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.' [Cit.] In evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine defendant's contacts with the state, focusing on whether (1) defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice. [Cits.] These three elements do not constitute a

due process formula, but are helpful analytical tools which ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts. [Cit.] The first two elements are used to determine whether defendant has established the minimum contacts necessary for the exercise of jurisdiction." *Beasley v. Beasley*, 260 Ga. 419, 421 (396 SE2d 222) (1990). See OCGA § 9-10-91.

Here, even construing the two affidavits in favor of Southern, there is no evidence sufficient to establish the required minimum contact. Telephone and mail contact by an out-of-state defendant do not, alone, amount to such contact, nor does signing a contract with an out-of-state person. *Pleats, Inc. v. OMSA, Inc.*, 211 Ga. App. 643, 646 (3) (b) (440 SE2d 214) (1993); *Scovill Fasteners*, supra; *White House, Inc. v. Winkler*, 202 Ga. App. 603, 604 (415 SE2d 185) (1992).

Even Aikens' statement that Anderson visited Southern's Georgia offices says that he did so *as a corporate officer*, and there is nothing to indicate any other act by Anderson to avail himself personally of the law of Georgia. Compare *Autrey v. UAP/GA &c.*, 230 Ga. App. 767 (497 SE2d 402) (1998) and *Dana Augustine, Inc. v. Parkman*, 226 Ga. App. 881 (487 SE2d 697) (1997) with *Girard v. Weiss*, 160 Ga. App. 295 (287 SE2d 301) (1981).

*Drennen v. First Home Savings Bank*, 204 Ga. App. 714 (420 SE2d 376) (1992), relied upon by Southern, is factually distinguished by the many more contacts with Georgia which were involved there. Alabama residents individually guaranteed an Alabama corporation's note for the construction of a motel in Georgia. Drennen traveled to Georgia to purchase the property on which the motel was to be built, and the corporation was then formed to purchase the property from Drennen, with all of the guarantors, including Drennen, being shareholders and three of them officers. The first corporate shareholders' meeting was held in Georgia, and some of the guarantors visited the Georgia project during construction as well as after for the purpose of managing the business.

We conclude that the trial court's grant of Anderson's motion to dismiss was correct.

2. Even if we were to conclude that there were sufficient contacts for jurisdiction over Anderson, there is also another basis upon which judgment should have been entered in favor of Anderson, and a judgment right for any reason will be affirmed. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991); *Fetterolf v. State*, 223 Ga. App. 744, 747 (6) (478 SE2d 889) (1996).

Although Aikens' affidavit opines that the 1994 Credit Application containing the terms of agreement between the parties was intended only to update ASA's trade references and "was not intended to replace the Credit Application of March 16, 1993," this is

not determinative of the effect of the second document because "[p]arol evidence is inadmissible to add to, take from, or vary a written contract." OCGA § 13-2-2 (1).

Disregarding that opinion, as we must, and examining the two agreements, we conclude that the 1994 contract covered the shipments made after its signing, this being the only reasonable interpretation of the two documents. *Puccini v. Thomas & Howard Co.*, 228 Ga. App. 537 (492 SE2d 297) (1997).

Even considering the 1993 guaranty in light of the fact that a guarantor may consent to future unilateral changes by the obligee or may agree that the guaranty may be a continuing one, there is nothing in the language of this guaranty which does so. *Steiner v. Handler*, 229 Ga. App. 833, 835 (3) (495 SE2d 132) (1997); *Lothridge v. First Nat. Bank &c.*, 217 Ga. App. 711 (458 SE2d 887) (1995).

Therefore, Anderson was entitled to summary judgment on this ground.

*Judgment affirmed. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 14, 1998 —
RECONSIDERATION DENIED MAY 26, 1998.

*Small, White & Marani, Karen F. White*, for appellant.
*Harman, Owen, Saunders & Sweeney, Merritt M. Wofford*, for appellee.