## A04A0571. ROBERTSON v. CRI, INC.
### (601 SE2d 163)

JOHNSON, Presiding Judge.

CRI, Inc. sued Bradley J. Robertson on his guaranty of certain obligations of Collaboratories, Inc. CRI moved for summary judgment on its claims against Robertson, and Robertson filed a cross-motion to dismiss the complaint for lack of personal jurisdiction. The trial court granted summary judgment to CRI. On appeal, Robertson claims that the trial court erred in failing to dismiss CRI's claims and in granting summary judgment to CRI because the trial court lacked personal jurisdiction over Robertson. For the reasons set forth below, we disagree and affirm.

"[A] defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction."[1] The trial court ruled on Robertson's motion to dismiss on the basis of written submissions.

> If the motion is decided on the basis of written submissions alone ... disputes of fact found in the affidavits are resolved in favor of plaintiff. Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard.[2]

---

[1] (Citations and punctuation omitted.) *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539 (428 SE2d 435) (1993).

[2] (Citation and footnote omitted.) *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 47 (581 SE2d 609) (2003).

So viewed, the record shows that Collaboratories was incorporated as a Delaware corporation.[3] According to its business plan, Collaboratories acted as a consultant for "high growth and internet-enabled companies." Collaboratories' principal offices were in Atlanta, Georgia, and it had an office in West Hollywood, California.

Robertson was an officer, director, and shareholder of Collaboratories, according to the affidavit of Mary Pompeo, Collaboratories' office manager. Documentary support for the affidavit includes Collaboratories' Certificate of Incorporation, which names Robertson as one of five original directors. The shareholder's agreement contained in the record does not include a copy of the execution page, and Robertson denies receiving any stock certificate from Collaboratories, but Robertson does not deny that he signed the agreement. Under the terms of the shareholder's agreement, each of the original directors owned 500,000 shares of Collaboratories. The record also includes a contract signed by Robertson as Collaboratories' Chief Operating Officer, and Collaboratories' business plan names Robertson as its Chief Operating Officer and Chief Information Officer.

Collaboratories and Robertson, along with other individual guarantors, executed a Note Modification Agreement (the "Note Agreement"), with Wachovia Bank, N.A., pursuant to which Wachovia agreed to make additional disbursements under an earlier executed promissory note, and brought the amount of debt owed by Collaboratories to Wachovia to $400,000. Robertson also executed a Guaranty Agreement in which he agreed to guarantee payment under the Note Agreement. The Note Agreement and Guaranty are governed by the laws of Georgia. The proceeds of the loan evidenced by the Note Agreement were used as a line of credit to fund Collaboratories' operating capital and were deposited in an account at an Atlanta branch of Wachovia. Collaboratories also sent loan payments to Wachovia's offices in Atlanta. Wachovia's rights under the Note Agreement and Guaranty were later transferred to CRI.

Robertson alternated residences between California and Arizona, and has never been a Georgia resident. Robertson avers that his only contact with Georgia with respect to the Note Agreement and Guaranty, which he executed in California, were that he transmitted a credit profile to Wachovia in Georgia, he had a telephone conversation from California with a Wachovia representative in Georgia with respect to the credit profile, and that he participated from Arizona in a telephone conference call with a Wachovia representative in which the terms of the Note were discussed. Robertson also

---

[3] The original corporate name was Five Brains, Inc., which was changed to Collaboratories, Inc. on May 24, 2000.

mailed a $2,000 check from Arizona to Collaboratories' Atlanta office to be applied as payment on the Note.

According to Pompeo's affidavit, Robertson was engaged in Collaboratories' day-to-day business, and traveled to Atlanta at least four times in connection with his involvement with Collaboratories, including attending a board of directors meeting. Collaboratories provided health insurance for Robertson through its group insurance plan, and Robertson sent payments to Collaboratories' office in Atlanta on account of the health insurance. Robertson was issued an access card to Collaboratories' Atlanta office, as "Chief Technology Officer." Other contacts between Robertson and Collaboratories include that (i) Collaboratories provided Robertson with a laptop computer, (ii) Robertson submitted expense reports to and was reimbursed by Collaboratories, and (iii) Collaboratories provided Robertson with an American Express corporate card.

Our long-arm statute allows a Georgia court to exercise personal jurisdiction over any nonresident if he or she transacts business in Georgia.[4] In considering whether a Georgia court may exercise jurisdiction over a nonresident based on the transaction of business, we apply a three-part test:

> Jurisdiction exists on the basis of transacting business in this state if [1] the nonresident defendant has purposefully done some act or consummated some transaction in this state, [2] if the cause of action arises from or is connected with such act or transaction, and [3] if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.[5]

"The three-prong test is not to be applied inflexibly, but is to be used to assist the jurist in determining whether the requisite 'fair warning' of due process has been given."[6] However, in applying the Georgia long-arm statute, "[m]ere telephone or mail contact with an out-of-state defendant is insufficient to establish the purposeful activity with Georgia."[7]

---

[4] OCGA § 9-10-91 (1); *Dora-Clayton Agency v. Forjay Broadcasting Corp.*, 193 Ga. App. 340, 341 (2) (387 SE2d 617) (1989).

[5] (Punctuation omitted.) *First United Bank &c. v. First Nat. Bank &c.*, 255 Ga. 505, 506 (340 SE2d 597) (1986). See also *Yukon Partners, Inc. v. Lodge Keeper Group*, 258 Ga. App. 1, 4-5 (572 SE2d 647) (2002).

[6] *Klein v. Allstate Ins. Co.*, 202 Ga. App. 188, 190 (2) (413 SE2d 777) (1991).

[7] (Citation and footnote omitted.) *Stuart*, supra at 48 (1). See *First Nat. Bank of Ames, Iowa v. Innovative Clinical &c. Svcs.*, 266 Ga. App. 842 (598 SE2d 530) (2004) (mail and telephone contact is insufficient to satisfy the minimum contact required under the statute).

In *Ga. R. Bank &c. Co. v. Barton*,[8] the analysis of the first prong of the jurisdictional test hinged upon whether the defendant had invoked the protection of Georgia laws and whether the effect in Georgia of the defendant's activity was substantial.

> The trend of the opinions, however, is to construe long arm "transacting any business" statutes most liberally and to uphold the jurisdiction of the court of the plaintiff's residence in actions arising, either directly or indirectly, out of such transactions. . . . [A] single event may be a sufficient basis if its effects within the forum are substantial enough. Such a result may obtain whether or not the non-resident is physically present in the state.[9]

We concluded that a Georgia court could exercise personal jurisdiction over a nonresident who executed a promissory note in South Carolina for a $125,000 loan from a Georgia bank.

> There can be little doubt that appellee knowingly and purposefully availed himself of the financial resources of a Georgia banking institution; nor can one seriously dispute that the economic effect of a default of $125,000 would be "substantial." We hold, therefore, that . . . appellee purposefully did an act or acts and consummated a transaction or transactions within the state, so as to establish legally sufficient contacts.[10]

Comparing *Barton* to the facts of this case, we see that Robertson was a director, chief operating officer, and shareholder of a corporation whose principal office was in Georgia. A Georgia branch of Wachovia extended a $400,000 line of credit to Collaboratories based, at least in part, on Robertson's guaranty. The loan proceeds were disbursed to a Georgia account and the Note Agreement and Guaranty were governed by Georgia law.[11] Thus, as in *Barton*, Robertson could be characterized as having availed himself of the resources of a Georgia financial institution, and the loan could be characterized as substantial, thus showing the purposeful activity in Georgia required to satisfy the first prong of the test.

---

[8] 169 Ga. App. 821 (315 SE2d 17) (1984).

[9] (Citations and punctuation omitted.) Id. at 823.

[10] Id. at 823-824.

[11] See *Davis Metals, Inc. v. Allen*, 230 Ga. 623, 625 (198 SE2d 285) (1973) (defendant's execution of contract governed by Georgia law was considered in determining whether defendant was subject to personal jurisdiction in Georgia).

There are factual differences between *Barton* and this case in that the Georgia bank made the loan to Barton personally, and Barton came to Georgia to discuss the loan with the bank after the note went into arrears. However, Robertson's execution of the Note Agreement and Guaranty were business related and purposeful, and not in the nature of a gratuitous guaranty or a passive transaction, and so we do not find the nature of the loan transaction to be a distinguishing factor.[12] That Barton came to Georgia to discuss the loan also tends to show he purposefully availed himself of transacting business in the state, but Robertson also had additional contacts with Georgia. Although these contacts did not directly concern the guaranteed loan, the contacts did concern the business that the loan had funded, and show a nexus between Robertson, the forum, and the transaction as a whole.

In *Drennen v. First Home Sav. Bank*,[13] we considered whether the Georgia courts could exercise personal jurisdiction over nonresident defendants in a suit on guaranties of loans made by a New Jersey bank and negotiated in Alabama and New Jersey. The guarantors contended that because their Georgia contacts did not relate to the loan or guaranty, but only to the motel constructed with the loan proceeds, that the underlying suit did not arise from their activities in the forum. We disagreed, finding that sufficient contacts existed between the defendants and the overall transaction to establish that they purposefully availed themselves of the privilege of doing business in the state.

> [I]n considering questions of personal jurisdiction our inquiry is not limited to the execution of the guaranty contracts alone, as the contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.[14]

---

[12] Compare *Stuart*, supra at 47 (that guaranty of note was gratuitous is listed as a factor showing that the guarantor had not purposefully availed himself of privilege of doing business in Georgia).

[13] 204 Ga. App. 714 (420 SE2d 376) (1992).

[14] (Citations and punctuation omitted.) Id. at 716 (1).

Here, Robertson's ongoing contacts with Collaboratories in Georgia reflects upon whether Robertson availed himself of the Georgia forum. For instance, Robertson visited Georgia at least four times on Collaboratories-related business, submitted expense invoices to Collaboratories' Georgia offices for reimbursement, sent a payment on account of the Note Agreement to Georgia, and sent payments to Collaboratories' Georgia office on account of his health insurance plan. Based on *Barton, Drennen,* and the specific facts of this case, we conclude that the first prong of the jurisdictional test has been satisfied.

The second prong of the jurisdictional test is that the plaintiff's cause of action against the nonresident arises out of or is connected with the activity or activities of the defendant within Georgia. "[U]nder this second prong, the claim basically will arise out of, result from, or be reasonably linked to defendant's forum related activities."[15] For this purpose, CRI's claim arises out of Robertson's Georgia-related activities in that he signed the Note Agreement and Guaranty to induce a Georgia-based bank to fund the operations of a Georgia-based corporation of which he was a shareholder, director, and officer. In *Barton,* we concluded that the execution in South Carolina of a note to a Georgia-based financial institution was sufficient to satisfy the second prong of the jurisdictional test, and, as in *Barton,* "[t]he direct connection between the execution of the [Note Agreement and Guaranty] and [CRI's] suit for collection is . . . obvious."[16] Accordingly, we find that the first two prongs of the jurisdictional test have been met.

The initial two prongs of the jurisdictional test

> are used to determine whether defendant has established the minimum contacts necessary for the exercise of jurisdiction. If a defendant has established minimum contacts, the court may then evaluate other factors that impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution to controversies, and the shared interest of the states in furthering substantive social policies.[17]

---

[15] *Klein,* supra at 190 (2).

[16] *Barton,* supra at 824.

[17] (Citations and punctuation omitted.) *Booksing v. Holley,* 210 Ga. App. 869, 872 (2) (437 SE2d 857) (1993).

Based on the above cited factors, the exercise of jurisdiction by the Georgia court is reasonable. Georgia has an obvious interest in adjudicating this dispute as the offices of the primary debtor and creditor are located in Georgia, the loan originated in Georgia and the proceeds were deposited in a Georgia-based account, and the Note Agreement and Guaranty are governed by Georgia law. Given Robertson's previous voluntary involvement with the state, including his business trips to Georgia, and his relationship to the Georgia-based debtor, it is not unfair to ask Robertson to come to Georgia to defend this claim. On the other hand, California, where Robertson executed the Note Agreement and Guaranty, and Arizona, where he resides, have no compelling interest in the resolution of the dispute.

Robertson argues that *Southern Electronics Distrib. v. Anderson*,[18] and *Algemene Bank Nederland, M.V.–Atlanta Agency v. Mattox*,[19] are factually analogous and, at least in the case of *Anderson*, controlling. We disagree. *Mattox* is not helpful in our analysis as there are few facts recited by the court other than that a resident of North Carolina executed a guaranty of a promissory note in favor of a Georgia-based bank, and that the guarantor "has had virtually no contact with the State of Georgia."[20]

The court in *Anderson* is more generous in describing the underlying facts. Anderson was an Alabama resident and principal of Anderson-Smith & Associates, Inc. (ASA), an Alabama based corporation.[21] Anderson executed a credit agreement with Southern Electronics, a Georgia corporation, on behalf of ASA, pursuant to which Southern Electronics would extend credit to ASA for the purchase of electronic equipment. Anderson guaranteed the credit agreement. After Southern Electronics shipped equipment to Alabama, ASA went bankrupt and Southern Electronics sued Anderson in Georgia to enforce the guaranty. The trial court dismissed Southern Electronics' case for lack of personal jurisdiction and we affirmed.[22]

Robertson points out that *Anderson*, as here, involved guaranties signed outside the state by out-of-state residents, and Anderson even visited Georgia on two occasions as an officer of ASA in an effort to increase ASA's credit line with Southern Electronics. However, *Anderson* is distinguishable. Here, the corporation receiving the guaranteed credit was doing business in Georgia, and Robertson, as a principal of Collaboratories, had contacts with Georgia based on that

---

[18] 232 Ga. App. 648 (502 SE2d 257) (1998).
[19] 611 FSupp. 144 (N.D. Ga. 1985).
[20] Id. at 145.
[21] *Anderson*, supra at 648 (1).
[22] Id. at 649-650 (1).

business relationship. Thus Robertson had purposefully availed himself of the privilege of doing business in Georgia so as to establish the minimum contacts required for the exercise of jurisdiction.

As all three prongs of the jurisdictional test are met, we conclude that the trial court did not err in denying Robertson's motion to dismiss. Robertson does not otherwise challenge the grant of summary judgment to CRI on its suit to enforce the Note Agreement and Guaranty. Accordingly, the trial court's order granting summary judgment to CRI is affirmed.

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

DECIDED JUNE 10, 2004.

*Anderson Dailey, Mark Ford,* for appellant.
*Jones & Walden, Leon S. Jones,* for appellee.

