A10A1255. PAXTON et al. v. CITIZENS BANK AND TRUST OF WEST GEORGIA.

(704 SE2d 215)

BLACKWELL, Judge.

Citizens Bank and Trust of West Georgia ("CB&T") brought this lawsuit to recover on promissory notes securing loans to

Hot-Lanta Developers Group, LLC ("Hot-Lanta") and on guaranties of those loans by the individual members of Hot-Lanta. The guarantors appeal from an order of the trial court denying their motion to dismiss for lack of personal jurisdiction. The guarantors assert that the trial court erred in finding that each of them had transacted business in the State within the meaning of Georgia's Long Arm Statute (OCGA § 9-10-90 et seq.). We affirm.

When a defendant moves to dismiss for lack of personal jurisdiction, he has the burden of proving that he is not subject to the jurisdiction of the court. *Catholic Stewardship Consultants v. Ruotolo Assoc.*, 270 Ga. App. 751, 752 (608 SE2d 1) (2004). Where the motion is decided without an evidentiary hearing and based solely upon the written submissions of the parties, as it was here, any disputes of fact must be resolved in the light most favorable to the party asserting the existence of personal jurisdiction, and we review the decision of the trial court de novo. *Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286, 286 (656 SE2d 898) (2008). See also *Southern Electronics Distrib. v. Anderson*, 232 Ga. App. 648, 648 (1) (502 SE2d 257) (1998).

Viewed in the light most favorable to CB&T, the record shows that all the guarantor-appellants are residents of, or companies based in, Alabama or Florida.[1] Around 2004, each of the appellants was approached by Scott Miller, an insurance agent and financial planner in Dothan, Alabama, about a potential real estate investment in Georgia. All but two of the appellants attended a meeting at Miller's Dothan office, where they saw a presentation by representatives of The Profile Group, an entity the appellants generally understood to be a Georgia-based real estate developer.[2] At this meeting, The Profile Group representatives said that they were looking for passive investors in the development of residential property located in Georgia. They explained that the investors would just need to provide money and that The Profile Group would manage the development project, doing "all of the work" and "taking care of" the details.

To invest in the Georgia real estate development project, the appellants formed Hot-Lanta, an Alabama limited liability company. Each of the appellants invested money in Hot-Lanta to be reinvested

---

[1] James R. Paxton, James A. Bradburn, Murray L. Baker, Kenneth L. Todd, and Daniel A. Bailey, are residents of Alabama or Florida; Paxton & Paxton, LLC, is an Alabama limited liability company owned solely by James Paxton and his wife. Dunn Properties, LLC, is an Alabama limited liability company owned solely by John Dunn, a resident of Alabama. Hopes, Dreams & Early Retirement, LLC, is an Alabama limited liability company owned solely by Michael Labanowski, a resident of Alabama.

[2] The two appellants who did not attend the meeting learned about the investment opportunity directly from Miller.

in the Georgia development project, and each appellant received a membership interest in Hot-Lanta. Under the terms of Hot-Lanta's articles of organization, each of the appellants was an initial manager of the company.[3] The appellants do not dispute that Hot-Lanta, although organized in Alabama, registered to do business in Georgia.

Hot-Lanta secured additional funding for the project by borrowing money from CB&T, a Georgia bank. CB&T made two loans to Hot-Lanta, one in the principal amount of $1,650,000, and the other in the principal amount of $600,000. In connection with these loans, Hot-Lanta gave CB&T two promissory notes, as well as a security interest in the property being developed. Appellants Bradburn and Paxton executed the security deed on behalf of Hot-Lanta. The original loan appears to have been structured so that the debtor would pay only the interest until the property was developed and individual lots began to sell. As the lots sold, the loan principal would then be paid down, until the debt was satisfied.

Between 2004 and 2007, the appellants received updates on the development of the property, but they did not receive any return on their investment. In 2007, however, the appellants had another group meeting in Miller's Dothan office, at which a representative of The Profile Group explained that, because of the economic downturn, the lots were not selling well. The Profile Group further explained that if the appellants wished the venture to continue, they would need to contribute additional funds to make the required loan payments.

After this meeting, appellants Paxton and Bailey traveled to Georgia to inspect the development. They also visited CB&T's Carrollton office, where they spoke with two bank employees regarding the status of the loan. In January 2008, Hot-Lanta renewed the original loans and executed two promissory notes in favor of CB&T, one in the principal amount of $800,745.76, and another in the principal amount of $595,073.79. The notes have identical terms, each stating that the accrued interest would be paid monthly and that the principal would be due on July 5, 2008. The notes also contain a choice of law provision that states, in relevant part: "The laws of the United States and, to the extent not inconsistent therewith, of the State of Georgia will govern this note."

In connection with these loan renewals, CB&T required that each member of Hot-Lanta provide it with a personal guaranty. Those guaranties expressly recite that they were given for the

---

[3] The articles of organization provided that these persons and entities would serve as the initial managers only until the first annual meeting of the members, at which time one or more members would be elected as managers, to serve a one-year term. There is no evidence in the record, however, that shows such an election ever occurred.

purpose of inducing CB&T "to make loans or extend other accommodations to or for the account of Hot-Lanta Developers Group, LLC." The guaranties acknowledge that CB&T is located in Georgia and contain a choice of law provision, which provides that the guaranties are "governed by the laws of the State where the Lender is located." All communications between CB&T and the appellants with respect to the loan renewals and the related guaranties were accomplished by electronic mail, telephone, or United States Mail. The appellants executed all of the relevant documents in Alabama and transmitted them to CB&T in Georgia.

Between January and July 2008, each member of Hot-Lanta contributed additional funds to make the interest payments required under each of the promissory notes. In July 2008, however, the property still had not sold, and CB&T refused to renew the loans unless Hot-Lanta made a $300,000 payment on the principal amount. When the appellants declined to make such a payment on behalf of Hot-Lanta, the loan went into default. CB&T then filed the current action against Hot-Lanta and the appellants, seeking to recover on the promissory notes and the guaranties.

In its complaint, CB&T alleged that the trial court properly may exercise personal jurisdiction over the appellants because each has transacted business in Georgia. The appellants answered that the trial court lacks personal jurisdiction over them, and they subsequently filed motions to dismiss on the same grounds. Following a nonevidentiary hearing, the trial court summarily denied the motions to dismiss for lack of personal jurisdiction, but it granted a certificate of immediate review. This Court granted the appellants' application for an interlocutory appeal, and this appeal followed.

Georgia's Long Arm Statute permits the exercise of personal jurisdiction over a nonresident defendant if he, personally or through an agent, "[t]ransacts any business within this [S]tate." OCGA § 9-10-91 (1). In *Innovative Clinical &c. Svcs. v. First Nat. Bank &c.*, 279 Ga. 672, 675 (620 SE2d 352) (2005), our Supreme Court explained that "OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State . . . 'to the maximum extent permitted by procedural due process,'" and it overruled all prior decisions that interpreted "[t]ransacts any business within this [S]tate" more narrowly.

In determining the limits of procedural due process, this Court applies a three-part test:

> Jurisdiction exists on the basis of transacting business in this [S]tate if (1) the nonresident defendant has purposefully done some act or consummated some transaction in

this [S]tate, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this [S]tate does not offend traditional [notions of] fairness and substantial justice.

(Punctuation and footnote omitted.) *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517-518 (1) (631 SE2d 734) (2006). We examine the first two factors "to determine whether [a] defendant has established the minimum contacts [with the forum state] necessary for the exercise of jurisdiction." (Citation and punctuation omitted.) *ATCO Sign &c. Co. v. Stamm Mfg.*, 298 Ga. App. 528, 534 (1) (680 SE2d 571) (2009). If such minimum contacts are found, we move to the third prong of the test to consider whether the exercise of jurisdiction is "reasonable" — that is, to ensure that it does not result solely from " 'random,' 'fortuitous' or 'attenuated' contacts. [Cit.]" Id.

1. The appellants claim that the first prong of the test cannot be satisfied here because they did not physically consummate any transaction in Georgia. Rather, they note, they executed the guaranties in Alabama and then mailed them to Georgia. In addition, they say, all of their communications with CB&T were by electronic mail, telephone, or United States Mail, except for the single occasion when Paxton and Bailey traveled to Georgia to inspect the property and meet with bank officials. We are not persuaded.

The appellants' argument ignores *Innovative Clinical &c. Svcs.*, supra, in which our Supreme Court said that "nothing in subsection (1) [of OCGA § 9-10-91] requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State." 279 Ga. at 675. In light of *Innovative Clinical &c. Svcs.*, it seems clear that Georgia "allows the assertion of long-arm jurisdiction over [nonresident defendants based on] business conducted through postal, telephonic, and Internet contacts." *ATCO Sign &c. Co.*, supra, 298 Ga. App. at 534 (1). See also *Home Depot Supply*, supra, 289 Ga. App. at 289 ("even where a nonresident defendant has no physical presence in Georgia, intangible contacts, such as telephone communications, can be sufficient to establish 'minimum contacts' which meet the constitutional standard for the exercise of personal jurisdiction"); *Aero Toy Store*, supra, 279 Ga. App. at 520 (1) ("a single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough[,] even though the nonresident has never been physically present in the state") (footnote omitted). For this reason, for purposes of considering personal jurisdiction, we look not just to the place where the guaranties were

executed, but we instead examine all of the relevant circumstances, including the purpose of the transaction and the terms of the contracts themselves. See *Drennen v. First Home Savings Bank*, 204 Ga. App. 714, 716 (1) (420 SE2d 376) (1992).

Our analysis is informed by several prior decisions that involved substantially similar factual circumstances. *Drennen,* like this case, involved personal guaranties given by the owners of an entity in connection with a loan to that entity. The owners were residents of Alabama, and the loan at issue was arranged by an Alabama loan broker and was made by a New Jersey bank. The purpose of the loan was to finance construction of a motel in Georgia. When the loan went into default, the bank sued the owners in Georgia to recover under the guaranties, and the owners moved to dismiss for lack of personal jurisdiction. The trial court denied that motion, and this Court affirmed, reasoning:

> Appellants executed the personal guarantees in order to induce appellee to make the notes to [the entity,] RHV, and the proceeds of those notes were used to construct and equip a motel in Georgia owned and operated by RHV, a corporation registered to do business in Georgia. The loans were secured by real property and fixtures located in Georgia. Given that RHV was incorporated for the express purpose of constructing and operating the motel, the parties undoubtedly intended for the loan payments to be made from the proceeds of the motel's Georgia operations. By constructing the motel in Georgia from the loan proceeds and by travelling to Georgia periodically to oversee its continued operation and to discuss the loan defaults with [the bank's] Georgia representatives, appellants established a continuing relationship with Georgia in connection with the guarantees.

Id. at 716-717 (1).

Similarly, *Georgia R. Bank &c. Co. v. Barton*, 169 Ga. App. 821 (315 SE2d 17) (1984), was a lawsuit against a nonresident on promissory notes given to a Georgia bank in connection with a loan. Barton was a real estate developer and resident of South Carolina and Florida. When the bank sued Barton to collect on the notes, Barton asserted lack of personal jurisdiction, arguing that because the loan documents had been sent to, received by, and executed by him in South Carolina, they did not represent a business transaction in Georgia. In reversing the grant of his motion to dismiss, this Court observed that "[t]here can be little doubt that appellee knowingly and purposefully availed himself of the financial resources of a

Georgia banking institution; nor can one seriously dispute that the economic effect of a default of $125,000 would be 'substantial.' " 169 Ga. App. at 823. We concluded that the first prong of the jurisdictional test was satisfied because Barton "purposefully did an act or acts and consummated a transaction or transactions within the [S]tate, so as to establish legally sufficient contacts." Id.

Twenty years after *Barton*, we relied on both its reasoning and that of *Drennen* to find that Georgia could exercise personal jurisdiction over an out-of-state resident in a suit on a personal guaranty. *Robertson v. CRI, Inc.*, 267 Ga. App. 757 (601 SE2d 163) (2004). In that case, Robertson, a resident of California and Arizona, was sued on a personal guaranty he gave to secure a loan to his employer made by a Georgia branch of a national bank. The employer was a Delaware corporation with its principal office in Atlanta and another office in California. Robertson worked out of the California office, but he did travel to Atlanta in connection with the employer's business. Robertson never traveled to Georgia for the purpose of negotiating or discussing the loan, however, and he executed the guaranty in California. Although Robertson asserted that the court lacked jurisdiction over him, we disagreed, and concluded that "as in *Barton*, Robertson could be characterized as having availed himself of the resources of a Georgia financial institution, and the [$400,000] loan could be characterized as substantial, thus showing the purposeful activity in Georgia required to satisfy the first prong of the test." Id. at 760.

In an attempt to avoid the impact of *Drennen*, *Barton*, and *Robertson*, the appellants here argue that our decision in *Southern Electronics Distrib. v. Anderson*, supra, 232 Ga. App. at 648, demands that we find they each lacked the requisite minimum contacts with Georgia. We disagree.

*Southern Electronics* was a lawsuit on a guaranty against Anderson, a resident of Alabama and a principal in an Alabama corporation. In his capacity as a corporate principal, Anderson had executed, on behalf of the corporation, two separate credit agreements with Southern Electronics, a Georgia entity. In connection with the first credit agreement, Anderson also executed a personal guaranty. After the Alabama corporation went bankrupt, Southern Electronics sued Anderson in Georgia. The trial court granted Anderson's motion to dismiss for lack of personal jurisdiction, and this Court affirmed. In so doing, we relied on the then-current rule that "[t]elephone and mail contact by an out-of-state defendant [with a Georgia resident] do not, alone," constitute the requisite minimum contacts for the exercise of long-arm jurisdiction. 232 Ga. App. at 650 (1). Because the vast majority of Anderson's contacts with Southern Electronics had been by telephone and the United States Mail, we concluded that he did not have sufficient minimum

contacts with Georgia to satisfy the first prong of the jurisdictional test. Id. We further noted that although Anderson had made two visits to Southern Electronics' Georgia offices, he did so in his capacity as a principal of the corporation and that there was "nothing to indicate any other act by Anderson to avail himself personally of the law of Georgia." Id.

The legal principle upon which *Southern Electronics* seems to have been based — that electronic, telephonic, and postal contacts, as a matter of law, cannot amount to transacting business in Georgia — was flatly rejected by our Supreme Court in *Innovative Clinical &c. Svcs.*, 279 Ga. at 675. Moreover, the personal guaranty at issue in *Southern Electronics* appears to have been gratuitous — that is, given for the benefit of the corporation only and not for the guarantor's personal benefit. The same cannot be said of the personal guaranties at issue here. Instead, the appellants here guarantied the loan renewals because each had a significant financial interest in the real estate development, and they were seeking to avoid foreclosure on the property so that they would have the opportunity to at least recoup their initial investments. Unlike the guarantor in *Southern Electronics*, the appellants in this case availed themselves of the law of Georgia by signing personal guaranties to induce a Georgia bank to renew loans to a company they owned and for the purpose of financing a real property development in Georgia in which their company had invested with the hope of profiting personally from the transaction. In short, we think that the continuing viability of the holding of *Southern Electronics* is questionable in light of *Innovative Clinical &c. Svcs.*, and we think that *Southern Electronics* is distinguishable in any event.

We think that *Drennen*, *Barton*, and *Robertson* are more like this case, and applying the rationale of these decisions, we must conclude that the first prong of the jurisdictional test is satisfied. Although Hot-Lanta was an Alabama company, it was registered to do business in Georgia, and the appellants understood that it was formed for the sole purpose of developing property in this State. While all of the appellants may not have known that the lender was located in Georgia at the time of their original investment in Hot-Lanta, they certainly knew that they were dealing with a Georgia lender by the time they induced the renewal of the loans by executing personal guaranties. Given these circumstances, the appellants transacted business in this State, within the meaning of OCGA § 9-10-91 (1).[4]

---

[4] We emphasize that this case involves a commercial loan, not a consumer loan, and that the guarantors had a stake in the borrower. We decide nothing today about personal jurisdiction in a case involving a consumer loan or a gratuitous guaranty.

2. We also find that the second prong of the jurisdictional test is satisfied because CB&T's claims arise out of appellants' Georgia activities, including the loan transaction and related guaranties. See *Robertson*, supra, 267 Ga. App. at 762 (bank's claim arose out of "Robertson's Georgia-related activities in that he signed the [loan documents] and [g]uaranty to induce a Georgia-based bank to fund the operations of a Georgia-based corporation of which he was a shareholder, director, and officer"); *Barton*, supra, 169 Ga. App. at 824 ("The direct connection between the execution of the notes and [the bank's] suit for collection is so obvious as to require no elaboration. Suffice it to say that the second prong of the test is also satisfied.").

3. Having applied the first two prongs of the jurisdictional test and concluded that the appellants have the requisite minimum contacts with Georgia, we now must determine whether the exercise of jurisdiction by a Georgia court over the appellants in this case comports with "traditional [notions of] fairness and substantial justice." *Aero Toy Store*, supra, 279 Ga. App. at 518 (1). In making this determination, we

> evaluate [those] factors that impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering substantive social policies.

(Citation and punctuation omitted.) *ATCO Sign &c. Co.*, supra, 298 Ga. App. at 534 (1).

In this case, the appellants have pointed to no evidence showing that litigating this action in Georgia would unduly burden them. All of the appellants are residents of either Alabama or Florida, and the appellants identify no logistical or financial difficulties in defending a case in Georgia that might amount to an undue burden. Moreover, Georgia clearly has an interest in adjudicating this dispute, given that it involves both a significant loss suffered by a Georgia financial institution and real property located in this State. Furthermore, as the discussion in Division 1, supra, demonstrates, appellants have not been sued in Georgia because of random or fortuitous circumstances. See *Home Depot Supply*, supra, 289 Ga. App. at 289; *Genesis Research Institute v. Roxbury Press*, 247 Ga. App. 744, 745 (542 SE2d 637) (2001). Given the appellants'

> purposeful personal dealings with the Georgia [bank], dealings which bestowed substantial benefits to [appellants]

and induced substantial action by [the bank] to its detriment, "neither reasonableness nor fair play nor substantial justice would be offended" by haling [appellants] into a Georgia court and exercising jurisdiction over [them].

*White House, Inc. v. Winkler*, 202 Ga. App. 603, 605 (415 SE2d 185) (1992). See also *Barton*, supra, 169 Ga. App. at 823.

In light of "appellants' deliberate affiliation with Georgia and the reasonable foreseeability of litigation here," *Drennen*, supra, 204 Ga. App. at 717 (1), we find that they are subject to the personal jurisdiction of Georgia's courts in this case. Accordingly, we affirm the order of the trial court.

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED NOVEMBER 24, 2010.

*Brock, Clay, Calhoun & Rogers, Carl G. Kleeman IV*, for appellants.

*Smith, Diment & Conerly, Joseph N. Smith, Charles S. Conerly, Randall C. Parian*, for appellee.