## A10A2098. NOORANI v. SUGARLOAF MILLS LIMITED PARTNERSHIP OF GEORGIA.
(708 SE2d 685)

ADAMS, Judge.

This case involves a suit on a guaranty. The trial court entered judgment against Amir Noorani, one of the guarantors, and he filed this appeal, seeking review of an order denying his motion to dismiss for lack of jurisdiction, an order imposing discovery sanctions, and the final judgment and order. The facts relevant to the consideration of each of these orders will be set forth in the numbered divisions below.

1. After the record in this appeal was transmitted to this Court and the case docketed here, the trial court issued an order purporting to dismiss this appeal based on Noorani's inexcusable and unreasonable delay in causing the record to be transmitted to this Court. Plaintiff/appellee Sugarloaf Mills Limited Partnership of Georgia d/b/a Discover Mills (hereinafter Discover Mills) has filed a motion to dismiss or remand this appeal, "to give effect to the trial court's dismissal order." However, in *Noorani v. Sugarloaf Mills Limited Partnership of Ga.*, 308 Ga. App. 168 (706 SE2d 750) (2011) we reversed the trial court's order dismissing this appeal. Thus, Discover Mills' motion to dismiss or remand is hereby denied. *Lipsteuer v. CSX Transp.*, 236 Ga. App. 806, n. 1 (513 SE2d 532) (1999).

2. Noorani first challenges the trial court's denial of his motion to dismiss based on lack of personal jurisdiction. We find no error and affirm.

The following facts are pertinent to the resolution of this issue. Amir and Shabnam Noorani, who are residents of Texas, executed a guaranty for rent owed under a retail lease at Discover Mills, which is located in Gwinnett County, Georgia. The lease was entered into by Chain D'Oro, Inc., a Texas corporation,[1] as tenant, and Discover Mills, a Delaware limited partnership, as lessor, and was executed by Amir Noorani in his capacity as vice president of Chain D'Oro. Both the lease and guaranty were executed in Texas, and the guaranty was incorporated into and made a part of the lease. Further, the lease but not the guaranty contained a Georgia choice of law and a forum selection provision.

---

[1] Chain D'Oro's store at Discover Mills operates under the trade name of Watches, Inc.

In 2005, Discover Mills obtained a default judgment against Chain D'Oro in the amount of $210,641.14 for rent owed under the lease plus post-judgment interest.[2] Discover Mills then brought suit on the guaranty against Amir and Shabnam Noorani, seeking to recover the amount of its judgment. Amir and Shabnam Noorani filed a motion to dismiss based on lack of personal jurisdiction, and the trial court granted the motion as to Shabnam Noorani but denied the motion as to Amir. Amir now challenges the denial of his motion.

Pursuant to subsection (1) of the Georgia Long Arm Statute, OCGA § 9-10-91, a Georgia court is authorized to exercise personal jurisdiction over a nonresident who "[t]ransacts any business within this state[.]"

> In *Innovative Clinical & Consulting Svcs.* [*v. First Nat. Bank &c.*], 279 Ga. [672, 675 (620 SE2d 352) (2005)], our Supreme Court overruled all cases taking a narrow view of subsection (1), instead clarifying that, if a cause of action arises out of conduct within this state, OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State . . . to the maximum extent permitted by procedural due process.

*Hyperdynamics Corp. v. Southridge Capital Mgmt.*, 305 Ga. App. 283, 293, n. 20 (699 SE2d 456) (2010) (physical precedent only).

As is pertinent to this issue, the record shows that Noorani visited the Chain D'Oro store at Discover Mills on several occasions to review records and check inventory. Additionally, Noorani visited the office of the general manager of Discover Mills for the purpose of discussing concerns regarding the performance of the store, to request rent reductions and to discuss other matters associated with the operation of the store. The general manager also averred that Noorani contacted him by phone on several occasions to discuss these same matters. Noorani confirmed at the hearing on the motion to dismiss that he had visited the manager's office "one or two times" to discuss the rent reduction, but stated that "*most* of the time my brother-in-law was talking on the phone for the negotiation[s]." (Emphasis supplied.)

Further, the record shows that after suit was filed against Chain D'Oro to collect the unpaid rent, the summons and dispossessory proceeding were forwarded to Noorani by the store's manager, and Noorani traveled to Georgia in his capacity as vice president in an

[2] Chain D'Oro filed an application for discretionary review from the denial of its motion to set aside the default judgment, but we dismissed that application as untimely.

attempt to defend the suit.

On appeal, Noorani argues that these contacts were insufficient to authorize a Georgia court to exercise personal jurisdiction over him based on the transacting business section of the Long Arm Statute.

> In considering whether a Georgia court may exercise jurisdiction over a nonresident based on the transaction of business, we apply a three-part test: Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

(Footnote omitted.) *Robertson v. CRI, Inc.*, 267 Ga. App. 757, 759 (601 SE2d 163) (2004). In applying this test,

> [w]e examine the first two factors "to determine whether (a) defendant has established the minimum contacts (with the forum state) necessary for the exercise of jurisdiction." (Citation and punctuation omitted.) *ATCO Sign &c. Co. v. Stamm Mfg.*, 298 Ga. App. 528, 534 (1) (680 SE2d 571) (2009). If such minimum contacts are found, we move to the third prong of the test to consider whether the exercise of jurisdiction is "reasonable" — that is, to ensure that it does not result solely from " 'random,' 'fortuitous' or 'attenuated' contacts. (Cit.)" Id.

*Paxton v. Citizens Bank &c.*, 307 Ga. App. 112, 116 (704 SE2d 215) (2010). *Southern Electronics Distributors v. Anderson*, 232 Ga. App. 648 (1) (502 SE2d 257) (1998).

Further, a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. *Southern Electronics*, 232 Ga. App. at 648 (1). And factual disputes must be resolved in favor of jurisdiction. *Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286, 288 (656 SE2d 898) (2008).

(a) Noorani argues that the first part of the test cannot be met because he, personally, did not consummate any business transactions or conduct any business transactions in this state. He points to the fact that all the negotiations for the guaranty, as well as the underlying lease, took place in Texas, and that both the guaranty and the lease were executed in Texas. He also asserts that he was acting

on behalf of the corporation and not his own behalf in executing the lease and in his subsequent visits to the store. Thus, relying on *Southern Electronics*, he argues the trial court erred by finding the required minimum contacts with this state. But as we recently noted, "[t]he legal principle upon which *Southern Electronics* seems to have been based — that electronic, telephonic, and postal contacts, as a matter of law, cannot amount to transacting business in Georgia — was flatly rejected by our Supreme Court in *Innovative Clinical &c. Svcs.*, 279 Ga. at 675." *Paxton*, 307 Ga. App. at 119 (1). Moreover, as also stated in *Paxton*, "for purposes of considering personal jurisdiction, we look not just to the place where the guaranties were executed, but we instead examine all of the relevant circumstances, including the purpose of the transaction and the terms of the contracts themselves. See *Drennen v. First Home Savings Bank*, 204 Ga. App. 714, 716 (1) (420 SE2d 376) (1992)." Id. at 116-117 (1).

> In considering questions of personal jurisdiction our inquiry is not limited to the execution of the guaranty contracts alone, as the contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these facts — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Robertson*, 267 Ga. App. at 761.

The stated purpose of the guaranty Noorani executed was to "guarantee the full, faithful, and timely payment and performance by Tenant of all the payments, covenants and other obligations of Tenant under or pursuant to the Lease." The lease was for the rental of retail space in a Georgia shopping mall, and Noorani personally guaranteed the rent obligations under the lease. Moreover, the guaranty was "annexed to" and made a part of the lease.[3] Although not all of his contacts with this state directly related to the guaranty "the contacts did concern the business that the loan had funded, and show a nexus between [Noorani], the forum, and the transaction as a whole." *Robertson*, 267 Ga. App. at 761. And although Noorani contends that his contacts with this state were only made in his

---

[3] Because the terms of the lease were not made a part of the guaranty, we agree with Noorani that he was not bound by the forum selection or choice of law provision contained in the lease.

capacity as a representative of the corporation, because Noorani had personally guaranteed the rent payments due under the lease, contacts relating to the financial success of the store, including the negotiations he undertook for rent reductions, were clearly of personal benefit to him.

Moreover, other factors distinguish this case from *Southern Electronics*. *Southern Electronics* involved an Alabama corporation that did not do business here, and the guaranty was for a credit line on an open account through which the Alabama corporation purchased computer hardware from a Georgia corporation to be shipped to Alabama. *Southern Electronics*, 232 Ga. App. at 648-649 (1). In contrast, the corporate entity here was operating a retail store in a Georgia shopping mall, providing a clear nexus with this state.[4]

In our opinion, the facts of this case more closely align it with cases such as *Paxton*, and the cases it relies on, such as *Robertson, Drennen* and *Ga. R. Bank &c. Co. v. Barton*, 169 Ga. App. 821 (315 SE2d 17) (1984), which are summarized in *Paxton*. Based on those cases, as well as the particular circumstances here, we find Noorani's contacts sufficient to satisfy the first prong of the test.

(b) Moreover, the direct connection between the loan, guaranty, Noorani's activities here and Discover Mills' claim under the guaranty "is so obvious as to require no elaboration. Suffice it to say that the second prong of the test is also satisfied." *Barton*, 169 Ga. App. at 824. See also *Paxton*, 307 Ga. App. at 120 (2).

(c) Our final step in the application of the three-part test is to "determine whether the exercise of jurisdiction by a Georgia court . . . in this case comports with 'traditional notions of fairness and substantial justice.' *Aero Toy Store*, [*LLC v. Grieves*, 279 Ga. App. 515, 518 (1) (631 SE2d 734) (2006)]." *Paxton*, 307 Ga. App. at 120 (3).

"Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." (Punctuation and footnote omitted.) *Home Depot Supply*, 289 Ga. App. at 288.

Although, as stated in footnote 3, we agree with Noorani that the consent to jurisdiction provision in the lease did not individually and directly bind him since he only signed that contract in his corporate capacity and its terms were not incorporated into the guaranty, we do find it relevant to show that Noorani could anticipate being sued in a Georgia court for claims arising out of the operation of the store

---

[4] *Stuart v. Peykan, Inc.*, 261 Ga. App. 46 (581 SE2d 609) (2003), on which Noorani also relies, is also readily distinguishable because the guarantor in that case had no direct or indirect interest in the Georgia enterprise involved in the transaction, but merely was acting as a gratuitous guarantor so that his son could purchase a business here. Id. at 49.

here. Moreover, although Noorani argues that "[e]very aspect and facet of the [g]uaranty . . . occurred in Texas" this argument ignores the purpose of the guaranty — to guarantee rent payments on retail space located in a Georgia shopping mall. For this reason also, Georgia has a substantial interest in litigating these claims. And, in light of the circumstances here, as more fully set forth above, we conclude that Noorani is not being forced to litigate here because of random, fortuitous or attenuated circumstances. In sum, and considering the relevant factors, we find that " ' "neither reasonableness nor fair play nor substantial justice would be offended" by haling [Noorani] into a Georgia court and exercising jurisdiction over [him].' *White House, Inc. v. Winkler,* 202 Ga. App. 603, 605 (415 SE2d 185) (1992)." *Paxton,* 307 Ga. App. at 121 (3).

3. Noorani next contends that the trial court erred by entering an order on December 7, 2006 imposing discovery sanctions before the issue of jurisdiction had been determined and that, because the trial court subsequently determined that it lacked jurisdiction over Shabnam Noorani, that order was null and void as to her. He further contends that the trial court erred when, in the final order and judgment, it required him to pay the entire discovery sanction.

First we note that subsequent to the December 7 order, the trial court issued another order requiring the sanctions awarded in the December 7 order to be held in escrow by Discover Mills' counsel and reserving ruling on the motion for sanctions "until a later date." According to remarks made by the trial court at a subsequent hearing, it appears that ruling was deferred until the jurisdictional issue was decided. Thus, it does not appear that the sanctions were actually awarded until the jurisdictional issue was resolved. Moreover, Noorani cites no authority for the proposition that the trial court was required to re-allocate the amount of the sanctions once Shabnam was dismissed under the circumstances here, where the discovery replies were filed jointly. We thus find this enumeration to be without merit.

4. Lastly, Noorani contends the trial court erred by granting Discover Mills' motion in limine thereby precluding him from presenting evidence contesting the debtor's liability and the amount of the judgment as established by the default judgment in the dispossessory action, in essence finding that as a guarantor with notice and opportunity to be heard, he was bound by the previous judgment entered against the principal debtor.

Both parties agree that *Escambia Chemical Corp. v. Rocker,* 124 Ga. App. 434 (184 SE2d 31) (1971), provides the starting point of our analysis of this issue. In that case, the creditor had sued the principal debtors and the guarantor, and the guarantor filed an answer, but the case against the debtors went into default and a judgment was

entered against them. The guarantor moved to set aside the default judgment so that he could contest the issue of liability or the amount of the judgment. The trial court denied the motion, but entered an order holding that the default judgment was not binding on the guarantor "in any manner," and thus he could challenge both liability and the amount of the award. Id. at 434.

As framed by this Court, the issue on appeal was "whether a guarantor can question the liability or the amount thereof of the principal debtor to the creditor where those matters have been established by a judgment against the debtor in the creditor's favor." *Escambia*, 124 Ga. App. at 436 (2). We then quoted at length from 38 AmJur2d 1083, Guaranty, § 77, beginning with the following statement: "*If the guarantor had notice of the action brought by the creditor against the principal debtor, and had an opportunity to be heard, the guarantor is precluded from questioning the debtor's liability.*" (Punctuation omitted; emphasis supplied.) Id. at 436 (2). We then went on to acknowledge that the authority was conflicting when the debtor did not have notice and opportunity to be heard, with some courts taking the view that even in the absence of an opportunity to be heard, a guarantor is bound by the judgment against the principal debtor; some courts taking the "middle view" that proof of the judgment in favor of the creditor creates a rebuttable presumption of the principals' liability to the creditor; and some courts taking the view that evidence of the judgment in the action against the debtor is not admissible. Id. This Court then adopted the more prevalent "middle view," as stated in Restatement, Security, p. 372, § 139 (2), and further held that this rule should be followed in cases involving default judgments, such as was the situation in *Escambia*, as well as in litigated cases. Id. at 439-440 (2). Applying that holding to the trial court's order under review in that case, we then reversed that order to the extent that it held that the guarantor was not prejudiced by the default judgment "in any manner" and held that the judgment, while not conclusive on the issue of the debtors' liability to the creditor, is prima facie evidence of liability. Additionally, we stated that a guarantor may present evidence rebutting the correctness of the amount, with the qualifications that while presenting rebuttal evidence as to liability or amount, "no defense may be interposed which would not have been available to the debtors if it had been timely presented, and that those defenses which are personal to the debtors may not, in any event, be raised." Id. at 440 (2).

On appeal, Noorani and Discover Mills urge differing interpretations of *Escambia*. Noorani argues that we should apply the rule set forth above — and that pursuant to that holding, the trial court's order granting the motion in limine should be reversed, and he

should be allowed to present rebuttal evidence as to both liability and amount. Discover Mills argues that *Escambia* decided only the issue of which rule to apply when the guarantor did not have notice and opportunity to be heard, and that, although arguably dicta because the guarantor in that case "had not received the benefit of such notice and . . . opportunity" by "[q]uoting with approval [the italicized] excerpt from American Jurisprudence, this Court *acknowledged* the near-universally accepted view that" a guarantor who has notice of the action brought by the creditor and opportunity to be heard is bound by the judgment against the debtor. (Emphasis supplied.) Thus, Discover Mills argues, the trial court in this case correctly ruled that Noorani, as a guarantor with notice and opportunity to be heard, is precluded from challenging the liability of the debtor or the amount of the judgment.

However, the guarantor in *Escambia* was actually a named defendant along with the debtors in the action filed by the creditor to collect the debt, and the guarantor, but not the debtors, had filed an answer in that suit. Thus, it appears to us that the guarantor in *Escambia* had notice and opportunity prior to the entry of the default judgment. Moreover, in that case the trial court had not denied the guarantor the opportunity to be heard, but rather had found that he was not prejudiced by the default judgment "in any manner." This Court reversed that portion of the trial court's order, holding that proper proof of the judgment at trial would constitute prima facie evidence of the debtor's liability, and the burden would then shift to the guarantor to rebut that evidence. *Escambia*, 124 Ga. App. at 441. Thus, while not holding that the guarantor was bound by the judgment against the creditor, this Court rejected the notion that the judgment against the debtor did not have any preclusive effect on the guarantor.

The holding in *Escambia* — that a guarantor is not conclusively bound by a judgment against the principal debtor, but that the liability and the amount established by that judgment constitutes prima facie evidence which may be rebutted by the guarantor, has been cited, or followed, by our appellate courts numerous times since it was decided, without any apparent consideration of whether the guarantor had notice and an opportunity to be heard. E.g., *McCorvey Grading &c. v. Blalock Oil Co.*, 268 Ga. App. 795, 796-797 (602 SE2d 842) (2004) (guarantor was a party to the suit against the debtor); *Walker v. Modnar Corp.*, 178 Ga. App. 374, 376 (2) (343 SE2d 148) (1986) (guarantors were parties to the suit against the debtors under a lease and filed both an answer and a counterclaim); *Peterson v. Midas Realty Corp.*, 160 Ga. App. 333, 334 (287 SE2d 61) (1981). Compare *Graybar Elec. Co. v. Opp*, 138 Ga. App. 456, 459 (2) (226 SE2d 271) (1976) (default judgment properly entered against guar-

antors who did not answer in suit filed against them and the debtors, but nevertheless allowed to present rebuttal evidence as to amount of damages in a suit on an open account).

Moreover, we think reversal of the trial court's order in this case is required even under Discover Mills' interpretation of *Escambia*. Although Noorani had notice of the suit against Chain D'Oro and traveled to Georgia in an attempt to file responsive pleadings on behalf of the corporation, or to obtain an attorney to do so, there is no evidence that he, as a personal guarantor of the obligations under the lease, had a real or meaningful opportunity to be heard in that action. The trial court erred in holding otherwise, and by holding that Noorani was conclusively bound by the default judgment against the debtor.

*Judgment affirmed in part and reversed in part. Smith, P. J., concurs. Mikell, J., concurs in Divisions 1, 2, and 3 and in the judgment.*

DECIDED MARCH 25, 2011.

*Steven J. Strelzik, Mary Trachian-Bradley*, for appellant.
*Arnall, Golden & Gregory, Richard A. Mitchell, Edward A. Marshall, James A. Gober*, for appellee.