A09A0005. ATCO SIGN & LIGHTING COMPANY, LLC
v. STAMM MANUFACTURING, INC.
(680 SE2d 571)

BARNES, Judge.
ATCO Sign & Lighting Company, LLC ("ATCO"), contends the trial court erred by dismissing its complaint against Stamm Manufacturing, Inc.,[1] for lack of personal jurisdiction. The record shows that, after ATCO and others filed a complaint against Stamm Manufacturing and two others, the trial court dismissed the claim against Stamm Manufacturing because the court found it lacked minimum personal contacts with Georgia. The court held that all the activities leading to the transaction at issue took place in Florida, and the only activity in Georgia involved an independent contractor. Later, the trial court published an order stating essentially that the claims against Stamm Manufacturing were dismissed because it lacked sufficient contacts with Georgia for jurisdiction to satisfy due process and thus was not subject to the Georgia Long Arm Statute, and Stamm Manufacturing had not committed a tortious act or omission in the State of Georgia sufficient to confer jurisdiction over it pursuant to OCGA § 9-10-91.
ATCO argues on appeal that Stamm Manufacturing did do business in Georgia and also committed a tortious act or omission here. As we agree that Stamm Manufacturing did business in this State and may have committed a tortious act here, we must reverse the trial court.
In the circumstances of this appeal the authority for exercising

---

[1] Although the plaintiffs amended their complaint to assert their claims against World Industrial Equipment, Inc., d/b/a Stamm Manufacturing, Inc., we will use the name "Stamm Manufacturing" because that is the nomenclature the parties used throughout the litigation.

personal jurisdiction over a nonresident defendant is contained in OCGA § 9-10-91 (1) or (2):

> A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state; [or] (2) Commits a tortious act or omission within this state. . . .

Our statute "requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513) (1987). When considering if a Georgia court may exercise jurisdiction over a nonresident based on the transaction of business, we apply a three-part test: Jurisdiction exists if (1) the nonresident defendant has purposefully done an act or consummated a transaction in Georgia, (2) the cause of action arises from or is connected with the act or transaction, and (3) the Georgia court's exercise of jurisdiction does not offend traditional fairness and substantial justice. *Robertson v. CRI, Inc.*, 267 Ga. App. 757, 759 (601 SE2d 163) (2004). Further, under our law,

> [a] defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence.

(Citation omitted.) *Yukon Partners v. Lodge Keeper Group*, 258 Ga. App. 1, 2 (572 SE2d 647) (2002). Additionally,

> [i]f the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff. Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position

with the trial court to determine the facts and therefore examines the facts under a non-deferential standard.

(Citations and punctuation omitted.) *Southern Electronics Distrib. v. Anderson*, 232 Ga. App. 648 (1) (502 SE2d 257) (1998).

As the parties acknowledge that the trial court decided the issue based upon written submissions alone, we must resolve all factual disputes in favor of ATCO and we owe no deference to the trial court's findings of facts. Considered in that manner, the record shows that ATCO, the Greater Atlanta Sign Company ("Atlanta Sign") and Atlanta Sign's owner Lewis G. Holland, Jr., filed a verified complaint against Stamm Manufacturing, Sunbridge Capital, Inc., Bobby King and Catherine King.[2] ATCO is a Connecticut limited liability company with its principal place of business in that state. The complaint alleged that Stamm Manufacturing is a Florida corporation with its principal place of business and registered agent in that state. Jurisdiction and venue were asserted under OCGA §§ 9-10-90; 9-10-91.

Atlanta Sign president Holland met Johnny Stamm of Stamm Manufacturing at a trade show in Jacksonville, Florida. Atlanta Sign needed a lift truck with a 63-foot boom, and Stamm said his company manufactured a truck that would fit the company's needs. Stamm introduced Holland to Bobby King and referred to King as Stamm's Georgia sales representative. Holland told Stamm he knew King from a previous transaction to buy a lift truck with a 63-foot boom which had not gone well. Holland said King had induced him "to execute certain documentation" so King could order and adapt a truck for Atlanta Sign, but the documents King had him sign were actually an equipment lease from Commercial Leasing Corporation. While awaiting the truck on order, King loaned a different truck to Atlanta Sign. The ordered truck never arrived, but Commercial Leasing nevertheless attempted to enforce the equipment lease and eventually sued Holland and Atlanta Sign.

Holland told Stamm that as a result of that transaction, his company would not do business with King. Stamm responded that Atlanta Sign would be dealing with Stamm Manufacturing, not King, and that Stamm Manufacturing would perform in accordance with its agreements.

Stamm offered to sell Atlanta Sign a new truck that met its needs for $75,000 and resell the truck that Atlanta Sign was then

---

[2] Greater Atlanta Sign Company and Lewis G. Holland, Jr., voluntarily dismissed their claims against Sunbridge Capital, Inc., and ATCO dismissed its complaint against Catherine King without prejudice. Thereafter, the trial court entered a final order, entry of default, and final judgment against Bobby King for $96,871.76.

using. Holland rejected this offer, stating that he would buy a new truck from Stamm Manufacturing only if two conditions were met: (1) Atlanta Sign would take possession of the new truck and use it for a reasonable period to assure that it met its needs, and (2) Atlanta Sign would not purchase the new truck until Stamm Manufacturing sold Atlanta Sign's old truck and paid the proceeds to the company financing it. Stamm Manufacturing accepted this proposal.

Stamm Manufacturing subsequently told Holland that it was in the process of completing the sale of Atlanta Sign's old truck and delivered the new truck to Atlanta Sign's place of business in Atlanta to try it out. Stamm Manufacturing took possession of Atlanta Sign's old truck to sell and pay off the debt, and advised Atlanta Sign that it was not obligated to execute the sales documents on the new truck at that time. Instead, Atlanta Sign was to retain the sales and financing documents on the new truck until Stamm Manufacturing sold and paid off Atlanta Sign's old truck. Nevertheless, Stamm Manufacturing sent Atlanta Sign an invoice for the purchase of the new truck. After Atlanta Sign reminded Stamm Manufacturing about their agreement, it heard nothing further about the invoice.

Meanwhile, ATCO's owner met Bobby King at a trade show in New Jersey. King told him that he was an aerial truck dealer representing "Stamm Equipment," which was based in Florida. ATCO needed a new aerial truck and contacted several dealers, including King. In response, King sent ATCO photographs of several trucks, including Atlanta Sign's old truck. Based upon the photographs, ATCO telephoned King to ask about Atlanta Sign's truck. King said he was selling the truck for Atlanta Sign and if ATCO bought it King would pay off the balance owed on the truck and send the title to ATCO. ATCO sent King a deposit to hold the truck until ATCO could see it.

ATCO's owner traveled from Connecticut to Atlanta, where King picked him up at the airport and took him to King's house where the truck was located. After the owner test drove the truck, he gave King a cashier's check for $34,000 and another check drawn on ATCO's account for $4,500. King promised to apply the sales proceeds to the debt secured by the truck and send ATCO a clean title. Instead of paying off the truck, however, King deposited the ATCO checks in the personal joint bank account he shared with his wife. The proceeds of the sale never reached either Atlanta Sign or the company financing the old truck.

When Atlanta Sign learned that the finance company had not received the sale proceeds, it contacted Stamm Manufacturing. In response to that call, King called Atlanta Sign and said that Federal Express would deliver the paperwork directly to Atlanta Sign. Owner Holland then called the finance company which notified him shortly

thereafter that it had received the documents and sale proceeds and that Atlanta Sign debt obligations were satisfied. Atlanta Sign then executed the documents to buy the new truck from Stamm Manufacturing and obtain financing.

Weeks later, however, the finance company notified Atlanta Sign that the "checks bounced," and the debt on the old truck was being revived. Atlanta Sign contacted Stamm Manufacturing to inquire about the insufficient funds and Mr. Stamm said the sales proceeds from the old truck had been deposited in King's personal checking account, that $19,000 had allegedly been seized by the "taxing authorities," and that Stamm Manufacturing's sales manager would collect the remaining $18,000 in King's account and wire that sum to the company that financed the old truck. The funds were never wired.

About a month after purchasing the truck, ATCO began calling King about the title to the truck. King told ATCO not to be surprised if Atlanta Sign called wanting their truck back. At this point ATCO called Atlanta Sign and learned that its payment had not been sent to the finance company holding a lien on the truck.

Based upon these assertions ATCO sought damages from the Kings and Stamm Manufacturing. It alleged that King was acting as Stamm Manufacturing's agent in the transaction, that although ATCO performed its obligations under the agreement, Stamm Manufacturing and the Kings have not despite numerous attempts to have them do so. Stamm Manufacturing responded that the contract was only between ATCO and King. ATCO also brought claims against the Kings and Stamm Manufacturing for trespass, interference, conversion and misrepresentation and against Stamm Manufacturing for negligent entrustment.

Bobby King and his wife filed a verified answer to the complaint. King admitted telling ATCO that he was acting as Stamm Equipment's agent and that the balance owed on the truck would be paid off and the title sent to ATCO. He also admitted that "he was acting as an agent of Stamm Manufacturing" when he effectuated the sale of the old truck to ATCO.

Stamm Manufacturing filed a "Special Appearance and Answer" in which it asserted, among other defenses, lack of personal jurisdiction and improper venue, and denied that it was liable to the plaintiffs. The company denied that it did business in Georgia, and thus moved to dismiss the complaint against it for lack of personal jurisdiction.

In support of its motion Stamm Manufacturing submitted the affidavit of John H. Stamm in which he asserted that Stamm Manufacturing did not and has never done business in the State of Georgia, and that the transaction was negotiated in Jacksonville,

Florida, between King and Atlanta Sign and was strictly between them. Bobby King has never been an employee of Stamm Manufacturing, but was paid a commission as an independent contractor/broker. Stamm further stated that King came to Florida to pick up the truck and delivered it to Georgia. He stated that this was the only piece of equipment that Stamm Manufacturing ever sold that was delivered to "an end user in Georgia." Stamm further denied that he spoke with any of the plaintiffs or with Atlanta Sign's owner Holland before the completion of the purchase and delivery of the equipment. When he did speak to Holland, Stamm was in Florida.

1. The result of this appeal is governed by the decision of our Supreme Court in *Innovative Clinical & Consulting Svcs. v. First Nat. Bank &c.*, 279 Ga. 672, 675-676 (620 SE2d 352) (2005). The Court held that subsection (1) of OCGA § 9-10-91

> authorizes a Georgia court to exercise personal jurisdiction over a nonresident who "(t)ransacts any business within" Georgia. As is the case with subsection (2), there are no explicit legislative limiting conditions on this language. Nothing in subsection (1) limits its application to contract cases; *nothing in subsection (1) requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State.* Although Georgia courts have engrafted these and other requirements onto subsection (1), such requirements conflict with the literal language of the statute. To be consistent with *Gust[ v. Flint*, supra, 257 Ga. 129], and the well-established rules of statutory interpretation that preclude judicial construction of plain and unambiguous statutory language, we must give the same literal construction to subsection (1) of OCGA § 9-10-91 that we give to the other subsections. *Accordingly, under that literal construction, OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State.* Of course, because this statutory language would expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process, we accordingly construe subsection (1) as reaching only to the maximum extent permitted by procedural due process. We hereby overrule all prior cases that fail to accord the appropriate breadth to the construction of the "transacting any business" language of OCGA § 9-10-91 (1).

(Citations omitted; emphasis supplied.) The import of this decision is

to eliminate the requirement for a defendant's actual physical presence within Georgia, and henceforth allows the assertion of long-arm jurisdiction over business conducted through postal, telephonic, and Internet contacts. Further, "a single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state." (Footnote omitted.) *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 520 (1) (631 SE2d 734) (2006).

In considering whether procedural due process permits Stamm Manufacturing to be subjected to the jurisdiction of Georgia courts we are guided by our Supreme Court's direction in *Beasley v. Beasley*, 260 Ga. 419, 421 (396 SE2d 222) (1990).

> Due process requires that individuals have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King v. Rudzewicz*, 471 U. S. 462 (105 SC 2174, 85 LE2d 528) (1985). In evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine defendant's contacts with the state, focusing on whether (1) defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice. *Straus v. Straus*, 260 Ga. 327 (393 SE2d 248) (1990); *Smith v. Smith*, 254 Ga. 450 (330 SE2d 706) (1985). These three elements do not constitute a due process formula, but are helpful analytical tools which ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of "random," "fortuitous" or "attenuated" contacts. *Burger King*, supra at 475. The first two elements are used to determine whether defendant has established the minimum contacts necessary for the exercise of jurisdiction. If a defendant has established minimum contacts, the court may then evaluate other factors that impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering substantive social policies. Id. at 477.

Resolving the disputes of fact in favor of ATCO, the evidence

shows that Stamm Manufacturing intentionally sought business in this State and placed King, as its agent, in the position where he could deal with both ATCO and Atlanta Sign. Without the actions and assurances of Stamm Manufacturing, its agent King would not have been positioned to obtain Atlanta Sign's old truck, receive ATCO's checks, fail to send the proceeds of the sale to the finance company, or fail to deliver title to ATCO. As all of these actions occurred in Georgia, Stamm Manufacturing was not forced to litigate in this State solely as a result of "random, fortuitous or attenuated" contacts.

Considered in this light, it is clear from the facts set out above that Stamm Manufacturing was doing business in this State sufficient to authorize the exercise of personal jurisdiction over it under OCGA § 9-10-91 (1).

2. Additionally, the facts discussed above show that ATCO's tort claims for trespass, interference, conversion and misrepresentation and for negligent entrustment against Stamm Manufacturing are also a sufficient basis to warrant the exercise of jurisdiction against Stamm Manufacturing under OCGA § 9-10-91 (2).

Therefore the judgment of the trial court dismissing Stamm Manufacturing must be reversed.

*Judgment reversed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JUNE 25, 2009.

*Ellenberg, Ogier & Rothschild, William L. Rothschild*, for appellant.

*Lewis, Brisbois, Bisgaard & Smith, Jeffrey W. Melcher*, for appellee.