**SECOND DIVISION
BARNES, P. J.,
RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 21, 2013**

# In the Court of Appeals of Georgia

A13A1532. LIMA DELTA COMPANY, et al. v. GLOBAL
        AEROSPACE, INC.

BRANCH, Judge.

Global Aerospace, Inc. ("Global"), filed this lawsuit in Fulton County Superior
Court against Lima Delta Company, Trident AS, and Sokicat,[1] all of whom are named
insureds under a broad horizon aviation insurance policy[2] ("the Policy") issued by
Global. Global's complaint seeks legal and equitable rescission of the Policy, based

---

[1] Global also named as defendants Trident Aviation Services, LLC and Trident
Aviation Services, Inc. Those defendants, together with the named insured Trident
AS, are referred to collectively herein as "Trident." Other defendants named by Global
include Socikat, Sokicat-CN Aviation, Socikat-CN Aviation, and CN Aviation. These
entities, together with the named insured Sokicat, are referred to collectively herein
as "Socikat."

[2] This policy provides liability coverage for the operation of the airplane as well
as property coverage for damage to or loss of the airplane itself.

upon what it alleges are material and fraudulent misrepresentations contained in the application for insurance. Global also seeks a declaratory judgment that no coverage exists under the Policy for the loss currently being claimed by the insureds. Lima Delta, Trident, and Socikat jointly filed a motion to dismiss based on the assertion that Georgia courts lack personal jurisdiction over any of the named defendants. Following a non-evidentiary hearing, the trial court denied that motion. The trial court thereafter certified its order for immediate review and the insureds filed an application for an interlocutory appeal. This Court granted that application and this appeal followed. For reasons explained below, we find no error by the trial court in denying the motion to dismiss and we therefore affirm that order.

Where, as here, a motion to dismiss for lack of personal jurisdiction is resolved based solely upon written submissions, rather than upon evidence presented at a hearing, "the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard." *Hyperdynamics Corp. v. Southridge Capital Mgmt.*, 305 Ga. App. 283, 284 (I) (699 SE2d 456) (2010) (citation and punctuation omitted). In conducting this review, "we resolve all disputed issues of fact in favor of the party asserting the existence of personal jurisdiction," id., bearing in mind that it is the movants who bear the burden

2

of proving that Georgia courts lack personal jurisdiction over them. *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990).

Viewed in the light most favorable to Global, the record shows that Global has its principal place of business in Parsippany, New Jersey and has a regional office in Atlanta.[3] Lima Delta is a Delaware corporation whose principal place of business is Wilmington, Delaware. Lima Delta describes itself as providing aircraft "owner trust services," pursuant to FAA regulations that allow non-U.S. citizens, including foreign corporations, "to transfer legal title of an aircraft to a trustee who is a citizen of the U.S. through a vehicle known as an 'aircraft owner trust.'" In addition to the trust agreement, whereby title to the aircraft is transferred, the parties also execute an operating agreement, which allows the beneficiary of the trust (the original, non-U.S. owner of the aircraft) to maintain and operate the aircraft "while the trustee [Lima Delta] holds the legal title and files for FAA registration" of the aircraft.

Trident is a Delaware limited liability company which also has its principal place of business in Wilmington, Delaware; like Lima Delta, its corporate address is

---

[3] Although appellants assert that Global is a Delaware corporation headquartered in London, England with its principal place of business in New Jersey, the record reflects only that Global's principal place of business is in Parsippany. There is no evidence indicating in which state Global is incorporated or which indicates that Global is "headquartered" in London.

the residential address of Dan Piraino, who is a principal in both Lima Delta and Trident. Trident provides aircraft management services, including the provision of pilots and maintenance and navigation services for privately-owned airplanes.

Socikat is the trade name of Societe Commerciale et Industriale Katangaise, a mining company based in the Democratic Republic of Congo ("DRC") whose principal place of business is in that country. In an affidavit submitted in support of the motion to dismiss, a representative of Socikat acknowledged that "[t]he ultimate owners of Socikat are individuals with personal and business interests in the United States of America, (including Delaware but not including the State of Georgia)." Although it is not clear from the record whether Socikat has ever registered as a U. S. corporation, the address given for Socikat in both the application for insurance and the Policy is the Wilmington, Delaware address of Lima Delta and Trident.

In April 2011, Lima Delta and Socikat executed a trust agreement whereby ownership of a 1989 Gulfstream G-IV airplane ("the airplane") was transferred from Socikat to Lima Delta.[4] Pursuant to an operating agreement executed by the parties, Socikat remained the beneficial owner of the airplane. Socikat then contracted with

---

[4] Lima Delta thereafter registered the airplane with the FAA and it was assigned registration number N2SA.

4

Trident to provide pilot services for the airplane using pilots licensed in the United States, to provide maintenance of the airplane and additional flight support services, and to obtain the necessary insurance for the airplane and flight operations.

The record shows that Lima Delta serves as the owner-trustee of approximately 30 aircraft registered with the FAA. Since at least 2008, the Atlanta office of Wells Fargo Insurance Services, USA, Inc. ("Wells Fargo") has worked with Piraino to procure insurance on at least ten airplanes.[5] On May 13, 2011, Piraino, in his capacity as "Managing Member" of Trident, sent an e-mail to Lauren Hanes, an account manager employed in the Atlanta office of Wells Fargo, and asked whether the then-current insurance policy on the airplane at issue included the "required coverage for flights to [the] EU. If not, please advise what must be done [to obtain such coverage]." Hanes responded that the current policy did not include EU coverage and that to obtain such coverage the insureds would need "to move the aircraft to another [insurance] carrier." Over approximately the next week, Hanes and Piraino corresponded via e-mail regarding an application for a new insurance policy, with Hanes obtaining information from Piraino that was necessary to place such an

___

[5] These policies include the one at issue as well as other policies procured on behalf of Lima Delta, Trident, and companies identified as DTP, LLC, CN Aviation, and November Whiskey, Inc.

5

application. Hanes thereafter corresponded with at least two insurance companies, including Global, in an attempt to procure the required insurance for the airplane. Most, if not all, of Hanes's contact with Global was through Global's Atlanta office.

Global eventually issued the Policy, with effective dates of June 22, 2011 through June 22, 2012, and which provided, among other things, $250 million in liability coverage and $8 million in coverage for the airplane itself. The cover page of the Policy states that it was issued through Global's Atlanta office and that the Policy was brokered by Wells Fargo's Atlanta office. Global's invoice for the policy premium bears the address of its Atlanta office and the invoice was mailed to Wells Fargo's Atlanta office. The premium payment was made by Trident to Wells Fargo at Wells Fargo's Atlanta office. The policy itself was received by Wells Fargo at its Atlanta office and the accompanying correspondence indicates that Wells Fargo was accepting delivery of the Policy on behalf of the insureds and that it would be responsible for forwarding the Policy documents to the insureds. Wells Fargo thereafter mailed the Policy from its Atlanta office to the insureds in Delaware.

On February 12, 2012, the airplane was destroyed in a crash in the DRC, and the crash resulted in at least one claim (for the loss of the airplane) being made under

the Policy.[6] Following a preliminary investigation, Global filed the current lawsuit seeking to rescind the Policy or alternatively, a declaration that the Policy did not provide coverage for any loss arising out of the February 2012 crash. Lima Delta, Trident, and Socikat now appeal from the trial court's order denying their joint motion to dismiss the complaint for lack of personal jurisdiction.

A Georgia court may exercise personal jurisdiction over a nonresident defendant where two requirements are met. First, the defendant must have committed some act or engaged in some activity set forth in Georgia's long-arm statute, OCGA § 9-10-91. Second, the exercise of jurisdiction over a particular defendant pursuant to the Long Arm Statute must comport with the requirements of due process. See *Hyperdynamics Corp.*, 305 Ga. App. at 293 (IV).

In this case, if Georgia has personal jurisdiction over the insureds, that jurisdiction rests upon subsection (1) of the Long Arm statute, which allows the exercise of personal jurisdiction over a non-resident defendant if that party, acting personally or through an agent, "[t]ransacts any business within this [S]tate." OCGA § 9-10-90 (1). In *Innovative Clinical & Consulting Services v. First Nat'l Bank of*

---

[6] The record shows that several people, including the flight crew, were killed in the crash and that others were injured. There is no evidence, however, that the insureds have sought coverage under the Policy's liability coverage provisions.

*Ames*, 279 Ga. 672 (620 SE2d 352) (2005), our Supreme Court clarified that "OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State to the maximum extent permitted by procedural due process," and overruled all cases that conflicted with this holding. 279 Ga. at 675. Recognizing that "[d]ue process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign," *Sol Melia v. Brown,* 301 Ga. App. 760, 763 (1) (688 SE2d 675) (2009), Georgia's appellate courts have developed a three-part test to determine whether a defendant has transacted business in Georgia so as to subject itself to the personal jurisdiction of the State's courts. Under that test:

> Jurisdiction exists on the basis of transacting business in this [S]tate (1) if the nonresident defendant has purposefully done some act or consummated some transaction in this [S]tate, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this [S]tate does not offend traditional notions of fairness and substantial justice.

*Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517-518 (1) (631 SE2d 734) (2006) (footnote and punctuation omitted). We examine the first two factors "to determine whether [a] defendant has established the minimum contacts [with the

forum state] necessary for the exercise of jurisdiction." *ATCO Sign & Lighting Co., LLC v. Stamm Mfg.*, 298 Ga. App. 528, 534 (1) (680 SE2d 571) (2009) (citation and punctuation omitted). If such minimum contacts are found, we apply the third prong of the test to determine whether the exercise of jurisdiction is "reasonable" – i.e., to ensure that it does not result solely from "'random,' 'fortuitous' or 'attenuated' contacts." Id. (citation omitted).

1. Lima Delta, Trident, and Socikat argue that the first prong of the test cannot be satisfied with respect to any of them, because they did not consummate any transaction in Georgia. In support of this argument, they point to the fact that Piraino, who was acting on behalf of all three insured entities, was not physically present in Georgia when the insurance was applied for and negotiated. Instead, he corresponded with Wells Fargo and made the application for insurance via the internet and telephone from locations throughout the United States (but not Georgia) and around the world. Moreover, the insureds argue that they sent payment for the policy to an address in Texas and they accepted delivery of the policy, through Piraino, at the Delaware address given for all three insureds and for Piraino individually, and that these facts show that the contract for insurance was neither made nor delivered in Georgia. We disagree.

9

As a threshold matter, we note that the fact that Piraino was not physically present in Georgia during the time he was negotiating and applying for the Policy on behalf of the insureds does not preclude us from finding that he transacted business within this State on behalf of the insureds. In *Innovative Clinical*, our Supreme Court specifically held that "nothing in subsection (1) [of OCGA § 9-10-91] requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State." 279 Ga. at 675 (punctuation omitted). As a result of this holding, Georgia now allows the assertion of long-arm jurisdiction over nonresident defendants, based on business conducted by the defendant or its agent "through postal, telephonic, and Internet contacts." *ATCO Sign & Lighting Co.*, 298 Ga. App. at 534 (1). See also *Home Depot Supply v. Hunter Management, LLC*, 289 Ga. App. 286, 289 (656 SE2d 898) (2008) ("even where a nonresident defendant has no physical presence in Georgia, intangible contacts, such as telephone communications, can be sufficient to establish 'minimum contacts' which meet the constitutional standard for the exercise of personal jurisdiction").

Moreover, regardless of Piraino's physical presence in or absence from Georgia, the evidence shows that the Atlanta office of Wells Fargo was acting as the agent of the insureds. It is undisputed that Wells Fargo is an independent insurance

10

broker and, under Georgia law, "independent agents or brokers are generally considered the agent of the insured, not the insurer." *Pope v. Mercury Indem. Co. of Georgia*, 297 Ga. App. 535, 540 (3) (677 SE2d 693) (2009) (citation and punctuation omitted). In addition to the presumption of agency created by Georgia law, proof that Wells Fargo was functioning as the insureds' agent can be shown "by circumstantial evidence, apparent relations, and conduct of the parties." *Nat'l Prop. Owners Ins. Co. v. Wells*, 166 Ga. App. 281, 282 (2) (304 S.E.2d 458) (1983) (citation and punctuation omitted). Here, the evidence shows that Piraino, Lima Delta, and Trident had a longstanding relationship with the Atlanta office of Wells Fargo that spanned a number of years. This office had assisted Piraino in obtaining at least 11 different insurance policies for different corporate entities in which Piraino either had an ownership interest or with whom one of Piraino's corporations had contracted to provide insurance. Additionally, with respect to the airplane at issue, Wells Fargo had previously assisted Piraino and the insureds in obtaining insurance from a carrier other than Global. In attempting to procure a replacement policy, Wells Fargo contacted at least two different insurers, one of which was Global. These facts show that in procuring the Policy, Wells Fargo was acting as the agent of the insureds, and not as the agent of Global. See *Kirby v. Northwestern Natl. Cas. Co.*, 213 Ga. App. 673, 678

11

(2) (445 SE2d 791) (1994) (evidence showing that independent agent who had worked with the insured "for years" and who had contacted several insurers on behalf of the insured "demanded the conclusion" that the agent was acting as the agent for the insured, not the insurer); *Pope*, 297 Ga. App. at 540-541 (3) (same); *Amtrust North America v. Smith*, 315 Ga. App. 133, 134-135 (1) (726 SE2d 628) (2012) (where an insurance agent assists the insured in obtaining insurance, he is the agent of the insured).

Acting as the agent of appellants, the Atlanta office of Wells Fargo contacted the Atlanta office of Global and proceeded to negotiate the Policy. As noted previously, the Policy itself reflects that it was issued through Global's Atlanta office and that the Policy was brokered by Wells Fargo's Atlanta office. Global's invoice for the Policy premium bears the address of its Atlanta office and it was mailed to Wells Fargo's Atlanta office. The premium payment was made by Trident to Wells Fargo at Wells Fargo's Atlanta office, and Wells Fargo accepted delivery of the Policy on behalf of the insureds at its Atlanta office. These facts demonstrate that the Policy was applied for, negotiated, paid for, and delivered in Atlanta. Accordingly, the evidence shows that the insureds, through their agent, transacted business in Georgia. See *Aero Toy Store*, 279 Ga. App. at 516-517.

2. Given that this action is for rescission of the Policy and for a declaration as to its terms, the lawsuit arises out of the parties' Georgia business transaction. Accordingly, the second prong of the personal jurisdiction test is satisfied. See *Paxton v. Citizens Bank and Trust of West Ga.*, 307 Ga. App. 112, 120 (2) (704 SE2d 215) (2010) (the second prong of the jurisdictional test is satisfied where the plaintiff's claims arise out of the defendant's Georgia business transaction); *Ga. R.R. Bank & Trust Co. v. Barton*, 169 Ga. App. 821, 823 (315 SE2d 17) (1984) (the direct connection between the execution of promissory notes in favor of a Georgia bank by a nonresident defendant and the suit for collection on the notes was "so obvious as to require no elaboration. Suffice it to say that the second prong of the [jurisdictional] test is also satisfied.")

3. We now turn to the question of whether Georgia's exercise of jurisdiction over the insureds comports with "traditional notions of fairness and substantial justice." *Aero Toy Store*, 279 Ga. App. at 518 (1). In making this determination, we

> evaluate [those] factors that impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering substantive social policies.

13

*ATCO Sign & Lighting Co.*, 298 Ga. App. at 534 (1) (citation and punctuation omitted). See also *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U S 102, 113-114 (II) (B) (107 SCt 1026, 94 LE2d 92) (1987).

Here, the insureds have identified no logistical or financial difficulties in defending a case in Georgia that would unduly burden them. In this regard, we again note that this case involves the application for the Policy and that the evidence will consist primarily of documents and testimony. As best we can tell from the record, the bulk of the documents relating to the insurance application will be located in the Atlanta offices of Global and Wells Fargo. Additionally, the insureds have identified Hanes and Dean Anderson, two employees in the Atlanta office of Wells Fargo, as "the two most critical fact witnesses in this case."

We further note that Piraino, who is a principal in both Lima Delta and Trident, is a pilot who routinely flies throughout the United States and internationally. Thus, it does not appear that traveling from Delaware to Atlanta for trial will unduly burden the representatives of Lima Delta and Trident. And although Socikat's principal place of business is in the DRC, the company has conceded that it has business interests throughout the United States and that jurisdiction over it would be appropriate in Delaware. The company has failed to come forward with any evidence, however,

14

showing that traveling to Atlanta for trial would be more burdensome for its representatives, either logistically or financially, than traveling to Delaware.

We also find that Georgia has a significant interest in adjudicating this dispute, as it appears that Georgia law will apply.[7] In contract actions such as this one, where the contract contains no choice of law provision, Georgia applies the rule of lex loci contractus. *Farm Credit of Northwest Florida, ACA v. Easom Peanut Co.*, 312 Ga. App. 374, 381 (718 SE2d 590) (2011). Under this rule, "when a contract is made and to be performed in one state, its validity, nature, construction, and interpretation are governed by the substantive law of that state. When a contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is to be performed applies." Id. (citations omitted). Here, the Policy provided worldwide coverage and it therefore had no particular place of performance. And because "insurance contracts often have no particular place where performance is contemplated," Georgia generally applies "the law of the place where the contract was made." *Fed. Ins. Co. v. Nat'l Distributing Co.*, 203 Ga. App. 763, 767 (1) (417 SE2d

---

[7] We reach this conclusion regarding the applicability of Georgia law based on the current record. We recognize, however, that additional evidence which affects this question may come to light during discovery. If such additional evidence is produced, then it will be for the trial court to decide, in the first instance, whether Georgia law controls this case.

15

671) (1992) (citation and punctuation omitted). As discussed supra in Division 1, the insurance contract at issue was made in Georgia, because that is where the Policy was applied for, paid for, and delivered. See *Gen. Telephone Co. of Southeast v. Trimm*, 252 Ga. 95, 96 (311 SE2d 460) (1984) (under lex loci contractus, a contact is made in Georgia where the "last act essential to the completion of the contract" was performed in this State). See also *Gen. Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 350 (2) (b) (309 SE2d 152) (1983) (an "insurance contract is constructively made at the place where the contract is delivered") (citation and punctuation omitted).

Finally, the fact that the majority of the relevant evidence and that the two "most critical" fact witnesses are located in Atlanta, combined with the fact that in all likelihood Georgia law will control this case, the interests of convenience and efficiency also weigh in favor of finding that Georgia's exercise of jurisdiction over the insureds is reasonable.

As the foregoing discussion demonstrates, the insureds are not being forced to litigate in Georgia because of random, fortuitous, or attenuated circumstances. Thus, "considering the relevant factors, we find that neither reasonableness nor fair play nor substantial justice would be offended by haling [the insureds] into a Georgia court and

16

exercising jurisdiction over [them]." *Noorani v. Sugarloaf Mills Ltd. Partnership of Ga.*, 308 Ga. App. 800, 804-805 (2) (c) (708 S.E.2d 685) (2011) (citations and punctuation omitted).

For the foregoing reasons, we affirm the order of the trial court denying the appellants' motion to dismiss.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur*.