**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 26, 2022**

# In the Court of Appeals of Georgia

A22A0726. WINN v. VITESCO TECHNOLOGIES GMBH.

DOYLE, Presiding Judge.

Frank Winn asserted products liability and negligence claims against Vitesco Technologies GmbH ("Vitesco"), a German corporation. Vitesco moved to dismiss the claims for lack of personal jurisdiction , and the trial court granted the motion. Winn appeals, arguing that the trial court erred by ruling that it lacked personal jurisdiction over Vitesco because (a) Vitesco failed to rebut his OCGA § 9-10-91 (3) jurisdictional allegation that Vitesco derives substantial revenue from goods used or services rendered in Georgia and that it committed a tortious injury in Georgia; and (2) the exercise of personal jurisdiction over Vitesco would not violate due process. For the reasons that follow, we affirm.

"A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that defendant can be subjected to the jurisdiction of the court."[1]

A defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. When examining and deciding jurisdictional issues on a motion to dismiss, a trial court has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA § 9-11-43 (b). If the trial court conducts an evidentiary hearing, it may resolve disputed factual issues, and we will show deference to those findings. On the other hand, [if], as here, a motion is resolved based solely upon written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a

---

[1] *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990).

2

non-deferential standard, and we resolve all disputed issues of fact in favor of the party asserting the existence of personal jurisdiction.[2]

Here, the record shows that in September 2016, a fire damaged Winn's home in Douglasville, Georgia. Alleging that the fire was caused by a water pump that had been recently installed in his 2013 BMW X5 vehicle during service by Sons Auto Holdings LLC, d/b/a BMW of South Atlanta ("BMW-SA"), Winn filed a negligence and products liability action against BMW-SA in Fulton County Superior Court. He later amended his complaint to add as a defendant Vitesco, the German corporation that manufactured the water pump.

As amended, the complaint alleged that Vitesco derives substantial revenue from goods used or consumed or services rendered in Georgia, committed a tort in Georgia, and is subject to personal jurisdiction in the Fulton County court pursuant to Georgia's long-arm statute, OCGA § 9-10-91. Vitesco filed a motion to dismiss by way of special appearance in which it sought dismissal of the complaint for lack of personal jurisdiction under OCGA § 9-11-12 (b) (2). The trial court granted the motion, finding that Vitesco's activities are not subject to the long-arm statute and

---

[2] (Citation, footnote, and punctuation omitted.) *Intercontinental Svcs. of Delaware v. Kent*, 343 Ga. App. 567, 568 (807 SE2d 485) (2017).

that, even if they were, any exercise of jurisdiction over Vitesco under the circumstances would violate due process.[3] The trial court granted Winn a certificate of immediate review, and he filed an application for discretionary appeal, which this Court granted. This appeal followed.

> A Georgia court may exercise personal jurisdiction over a nonresident defendant where two requirements are met. First, the defendant must have committed some act or engaged in some activity set forth in Georgia's [l]ong[-a]rm [s]tatute, OCGA § 9-10-91. Second, the exercise of jurisdiction over a particular defendant pursuant to the [l]ong[-a]rm [s]tatute must comport with the requirements of due process.[4]

In his second amended complaint, Winn alleged that "Vitresco derives substantial revenue from goods used or consumed or services rendered in this State and, having committed a tortious injury in this State, is subject to personal jurisdiction by this Court pursuant to OCGA § 9-10-91." In its motion to dismiss, Vitesco argued that it has no contacts with Georgia and that all of its

---

[3] The dismissal of Vitesco does not affect Winn's claims against defendant BMW-SA.

[4] *Lima Delta Co. v. Global Aerospace*, 325 Ga. App. 76, 79 (752 SE2d 135) (2013).

jurisdictionally-relevant conduct (design, manufacture, and sale of the water pump) occurred in Germany. Vitesco submitted the affidavit of Thorsten Eid, Vitesco's Head of Operational Excellence & Claim Management for a water pump product line, averring that Vitesco is a German company, and that it manufactured the subject water pump in Germany and sold the water pump to German company BMW AG in Germany, after which "it had no control or input into how, when, or where BMW AG used, distributed or sold it." Eid further averred that Vitesco's products are not designed or manufactured specifically for the Georgia market nor the U. S. market, and "it has no direct knowledge of whether or to what extent any of its products (including its water pumps) were ever sold in, or otherwise ended up in . . . Georgia." Vitesco makes no effort to target Georgia for marketing or sales, and it does not track any "revenue share" for sales in Georgia or any other state, country or continent. In response to Winn's discovery requests, Vitesco provided statements that it manufactured the water pump for use exclusively in BMW's N55 engine, that from 2009 to 2019 it sold approximately 1.25 million of the pumps to BMW AG, that approximately 1,392 BMW 2013 X5 vehicles like Winn's were sold in Georgia, that 19,251 BMW vehicles with N55 engines were sold in Georgia, and that Vitesco's pumps account for less than 50 percent of the market share of BMWs with N55

5

engines. It further stated that it knew its products were sold throughout the world, that BMWs were sold in the United States and in Georgia, and that the water pump would be installed in BMW X5 vehicles, such as the one Winn owned. Vitesco also "assume[d]" that its pumps could be sold in every state in the U. S. where there were BMW vehicles with N55 engines.

1. Winn contends that the court erred by ruling that it lacked personal jurisdiction over Vitesco because Vitesco "assumed" its water pumps would be sold throughout the United States, including Georgia. We disagree. Even assuming that Vitesco is subject to jurisdiction under the Long-Arm Statute, constitutional due process still precludes the exercise of personal jurisdiction over it.

> Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. In evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine defendant's contacts with the state, focusing on whether (1) defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice. Courts address the first two factors to determine whether the defendant has established the minimum contacts necessary for the exercise of jurisdiction. If such minimum contacts are established, courts then address the third factor to determine if the assertion of jurisdiction is

6

reasonable. Consideration of these three factors helps to ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of random, fortuitous or attenuated contacts.[5]

Applied to this case, therefore, the first issue is whether Vitesco purposefully availed itself of the laws of Georgia.[6] "Purposeful availment exists in the circumstance where a nonresident purposefully directs its activities toward forum residents."[7] In the instant case, Vitesco, a German manufacturer, sold the subject water pump to an out-of-state distributor, and the product eventually found its way into Georgia.

---

[5] (Citation and punctuation omitted.) *LG Chem, Ltd. v. Lemmerman*, 361 Ga. App. 163, 167 (863 SE2d 514) (2021) (cert. denied), quoting *Beasley*, 260 Ga. at 421.

[6] See *LG Chem, Ltd.*, 361 Ga. App. at 167 (1), quoting *Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286, 289 (656 SE2d 898) (2008), and citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, ___ U. S. ___, ___ (II) (A) (141 SCt 1017, 209 LE2d 225) (2021) ("The defendant, we have said, must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State.") (citation and punctuation omitted).

[7] (Punctuation omitted.) *LG Chem. Ltd.*, 361 Ga. App. at 167 (1), quoting *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 473 (II) (A) (105 SCt 2174, 85 LE2d 528) (1985).

7

The United States Supreme Court addressed a similar scenario in *Asahi Metal Indus. v. Superior Court of Cal.*,[8] in which the Court articulated two tests for finding purposeful availment in similar situations: "stream of commerce" and "stream of commerce plus."[9] Neither test commanded a majority from the Court, and Georgia has not yet decided which analysis is applicable.[10] Nevertheless, there is no jurisdiction over Vitesco in this case under either analysis.

Stated generally, the "stream of commerce test" confers personal jurisdiction if a defendant corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate."[11] The "stream of commerce plus test" imposes the additional requirement that the defendant

---

[8] 480 U. S. 102 (107 SCt 1026, 94 LE2d 92) (1987) (plurality).

[9] *LG Chem*, 361 Ga. App. at 167, 170 (1).

[10] See id. at 170 (1) ("Whether Georgia courts should adhere to the stream of commerce analysis . . . or adopt the 'stream of commerce plus' analysis appears unsettled.").

[11] (Punctuation omitted.) *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 137-138 (1) (a) (661 SE2d 185) (2008), disapproved in part on other grounds by *Bowen v. Savoy*, 308 Ga. 204, 209, n. 7 (839 SE2d 546) (2020), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297-298 (III) (100 SCt 559, 62 LE2d 490) (1980).

8

target the forum state in some manner.[12] Because it is uncontroverted that Vitesco

does not target the Georgia market in a manner sufficient to satisfy the "stream of

commerce plus" analysis, we consider the "stream of commerce" test only.

As explained in *World-Wide Volkswagon v. Woodson*,[13]

> [if] a corporation purposefully avails itself of the privilege of conducting
> activities within the forum [s]tate, it has clear notice that it is subject to
> suit there, and can act to alleviate the risk of burdensome litigation by
> procuring insurance, passing the expected costs on to customers, or, if
> the risks are too great, severing its connection with the [s]tate. Hence *if*
> *the sale of a product of a manufacturer or distributor . . . is not simply*
> *an isolated occurrence, but arises from the efforts of the manufacturer*
> *or distributor to serve, directly or indirectly, the market for its product*
> *in other [s]tates, it is not unreasonable to subject it to suit in one of*
> *those [s]tates* if its allegedly defective merchandise has there been the
> source of injury to its owner or to others. The forum [s]tate does not
> exceed its powers under the Due Process Clause if it asserts personal
> jurisdiction over a corporation *that delivers its products into the stream*

---

[12] See *Asahi*, 480 U. S. at 112 (II) (A) (providing examples that might indicate an intention to target the forum state, including "designing the product for the market in the forum [s]tate, advertising in the forum [s]tate, establishing channels for providing regular advice to customers in the forum [s]tate, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum [s]tate"); *LG Chem.*, 361 Ga. App. at 170 (1).

[13] 444 U. S. 286 (100 SCt 559, 62 LE2d 490) (1980).

9

*of commerce with the expectation that they will be purchased by consumers in the forum [s]tate.*[14]

The United States Supreme Court again addressed the "stream of commerce test" in *J. McIntyre Machinery, Ltd. v. Nicastro*,[15] a plurality opinion, which involved products liability claims arising from a metal-shearing machine manufactured in England by an English company that caused injuries in New Jersey. The majority found that purposeful availment could not be shown simply because the English defendant "kn[ew] or reasonably should [have] know[n]" that its products sold to a U. S distributor for nationwide distribution might be sold in New Jersey.[16] And as

---

[14] (Citations and punctuation omitted; emphasis supplied.) Id. at 297-298 (III).

[15] 564 U. S. 873 (131 SCt 2780, 180 LEd 2d 765) (2011).

[16] Id. at 877, 886 (III) ("[The plaintiff] has not established that J. McIntyre engaged in conduct purposefully directed at New Jersey. Recall that [the plaintiff's] claim of jurisdiction centers on three facts: The distributor agreed to sell J. McIntyre's machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey. The British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the [s]tate. Indeed, after discovery the trial court found that the 'defendant does not have a single contact with New Jersey short of the machine in question ending up in this state.' These facts may reveal an intent to serve the U. S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market.").

10

Justice Breyer wrote in his concurrence,[17] a foreign manufacturer does not purposefully avail itself of the laws of an individual state merely because it sold products to an independent U. S. distributor for nationwide distribution.[18]

Here, there is no evidence of a regular flow of product directly from Vitesco or regular course of sales of the Vitesco water pump in Georgia, nor is there evidence that Vitesco had the "expectation" that its product would be sold here. Instead, Vitesco designed and manufactured the water pump in Germany solely for use in

---

[17] We note that "'[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those [m]embers who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U. S. 188, 193 (II) (97 SCt 990, 51 LEd2d 260) (1977). "Most courts that have applied the *Marks* rule to *J. McIntyre Machinery* have determined that Justice Breyer's opinion was the judgment that concurred 'on the narrowest grounds.'") *State v. NV Sumatra Tobacco Tranding Co.*, 403 SW3d 726, 756, n.32 (Tenn. 2013) (collecting cases).

[18] *J. McIntyre*, 564 U. S. at 888 (Breyer, J., concurring) ("[T]he relevant facts found by the New Jersey Supreme Court show no regular flow or regular course of sales in New Jersey; and there is no[t] something more, such as special state-related design, advertising, advice, marketing, or anything else. [The plaintiff], who here bears the burden of proving jurisdiction, has shown no specific effort by the British [m]anufacturer to sell in New Jersey. He has introduced no list of potential New Jersey customers who might, for example, have regularly attended trade shows. And he has not otherwise shown that the British [m]anufacturer purposefully availed itself of the privilege of conducting activities within New Jersey, or that it delivered its goods in the stream of commerce with the expectation that they will be purchased by New Jersey users.") (punctuation omitted).

BMW's N55 engine (which is solely built in Austria and Germany) and sold it in Germany to a German corporation.[19] Vitesco had no control over when, how, or where BMW AG used, distributed or sold it, and "has no direct knowledge of whether or to what extent any of its products (including its water pumps) were ever sold in . . . or otherwise ended up in Georgia." Any Vitesco product sold in Georgia was sold by an independent entity. And Vitesco's assumption that one or more of its water pumps could be sold in Georgia by an independent third party is insufficient to satisfy due process.[20]

Simply put, there is no evidence that Vitesco purposefully availed itself of the laws of Georgia. Therefore, we need not consider the remaining two due process factors. Winn has not "established the minimum contacts necessary for the exercise of jurisdiction" over Vitesco.[21]

---

[19] Vitesco was not the sole manufacturer or water pumps used by BMW in the N55 engine.

[20] See *McIntyre*, 564 U. S. at 882 ("[A]s a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.").

[21] *LG Chem, Ltd.*, 361 Ga. App. at 167, quoting *Beasley*, 260 Ga. at 421.

12

2. In light of our holding in Division 1 that any exercise of jurisdiction over Vitesco under the circumstances would violate due process, we need not address whether the trial court had personal jurisdiction under Georgia's Long-Arm Statute.[22]

*Judgment affirmed. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[22] See *Delta Aliraq., Inc. v. Arcturus, Intl., LLC*, 345 Ga. App. 778, 781 (1) (815 SE2d 129) (2018) ("[T]his Court will affirm a trial court's ruling that is right for any reason."), quoting *Rozier v. Berto*, 230 Ga. App. 427, 430 (496 SE2d 544) (1998).